Brentwood Family Division
No. 2001-288

IN THE MATTER OF CHERYL ANNE CODERRE AND PAUL A. CODERRE

Argued: July 11, 2002
Opinion Issued: September 30, 2002

*Marshall Law Office,* of East Kingston (*Keri J. Marshall* on the brief), and *Robert E. Ducharme,* of Stratham, orally, for the petitioner.

*Cazden Law Office,* of Manchester (*Elizabeth Cazden* on the brief and orally), for the respondent.

DALIANIS, J. The respondent, Paul A. Coderre, appeals from the final divorce decree recommended by a Master (*Harriet J. Fishman,* Esq.) and approved by the Brentwood Family Division (*Taube,* J.). He argues that the court erred by: 1) ordering him to pay for his children's uninsured medical expenses and extracurricular activity expenses in addition to child support under the child support guidelines; 2) failing to adjust his child support obligation downward to account for those expenses; and 3) increasing his support obligation as a substitute for alimony. We affirm in part and reverse in part.

The record supports the following facts. The respondent and the petitioner, Cheryl Anne Coderre, were divorced in March 2001. They had two minor children. One child had experienced severe emotional problems during the last two years of the marriage, requiring hospitalization and ongoing therapy. The other child also received counseling at the time of the divorce.

Prior to the final hearing, the parties submitted proposed divorce decrees and requests for findings of fact and rulings of law. The respondent's proposed decree provided, among other things, that he would bear the expense of all round-trip transportation for the children during

his visitation period, and pay eighty percent of the children's extracurricular expenses. His proposed uniform support order provided that he would pay $529 every two weeks in child support, provide health insurance for the children, and pay the first $3,000 of the children's medical expenses. He requested, however, that his payment of uninsured medical expenses and visitation be offset against his support obligation.

Following a hearing, the court ordered the respondent to pay $288 per week in child support, consistent with the State's child support guidelines (guidelines). *See* RSA ch. 458-C (Supp. 2001). In addition, the respondent was ordered to pay all of the children's uninsured medical expenses and seventy-eight percent of their extracurricular activity expenses. The divorce decree provided that "[f]or so long as respondent pays the children's uninsured medical and dental expenses, there shall be no order to pay alimony to petitioner." The court denied the respondent's request to adjust his support obligation by offsetting his payment of uninsured medical expenses and visitation costs.

"We will uphold the trial court's decision unless it is unsupported by the evidence or tainted by an error of law." *In the Matter of Peirce and Peirce,* 146 N.H. 611, 613 (2001).

We first address whether uninsured medical expenses are part of the child support awarded under the guidelines.

> This court, of course, is the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. We interpret legislative intent from the statute as written, and therefore, we will not consider what the legislature might have said or add words that the legislature did not include. Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation.

*Appeal of Brady,* 145 N.H. 308, 310 (2000) (quotations and brackets omitted).

The guidelines are codified in RSA chapter 458-C. The legislature adopted them in an effort to establish uniformity in child support awards and comply with federal law. *See Peirce,* 146 N.H. at 613; *see also* RSA 458-C:1 (1992). RSA 458-C:3, I, sets forth the formula by which a court calculates the amount of support to be awarded. Generally, the parents' net income is multiplied by a set percentage, which in this case is thirty-three percent, and divided between the parents in proportion to their incomes. RSA 458-C:3, I, II(b).

 There is a rebuttable presumption that a child support award calculated under the guidelines is correct. RSA 458-C:4, II (1992). This presumption may be rebutted by a finding of the presiding officer that application of the guidelines would be unjust or inappropriate. *Giles v. Giles*, 136 N.H. 540, 544 (1992). Thus, the court may adjust a support award under the guidelines, either upward or downward, if it finds that a deviation is warranted. *Wheaton-Dunberger v. Dunberger*, 137 N.H. 504, 508 (1993). The guidelines expressly provide that the amount calculated pursuant to this formula represents the parties' total support obligation. RSA 458-C:2, XI.

 RSA 458:17, IX (1992) provides, however, that "[e]ach child support order shall include the court's determination and findings relative to health insurance and the payment of uninsured medical expenses for the children." The guidelines define "adjusted gross income" as gross income less, among other things, "[a]mounts actually paid by the obligor for allowable child care expenses or medical insurance coverage for the minor children to whom the child support order applies." RSA 458-C:2, I (e). The guidelines contain no deduction for uninsured medical expenses. Rather, they provide that the trial court may deviate from the guideline support amount if it finds that a child will incur ongoing *extraordinary* medical expenses. *See* RSA 458-C:5, I (a).

All statutes upon the same subject matter are to be considered in interpreting any one of them and, where reasonably possible, statutes should be construed as consistent with each other. *Nault v. N & L Dev. Co.*, 146 N.H. 35, 38 (2001). When interpreting two statutes that deal with a similar subject matter, we will construe them so that they do not contradict each other, and so that they will lead to reasonable results and effectuate the legislative purpose of each statute. *Id.*

 Having considered the guidelines in conjunction with RSA 458:17, we conclude that uninsured medical expenses are not part of general support under the guidelines. Rather, in light of RSA 458:17, IX, we interpret the legislative intent as mandating that the trial court make a separate award, in addition to general guidelines amount, for the children's medical expenses. If uninsured medical expenses were considered part of the obligor's total support obligation, there would be no need to require separate findings and determinations as to those costs.

The rationale behind treating uninsured medical expenses as separate from general guidelines support is sound. Unlike ordinary expenses for food and shelter, uninsured medical expenses may vary greatly from case to case. As a result, the trial court should have discretion to make a

separate award for these expenses. Interpreting uninsured medical expenses as separate from the general support obligation creates consistency between RSA chapter 458-C and RSA 458:17, IX, and leads to a reasonable result that effectuates the legislative purpose of the statutory scheme.

We recognize that the cost of uninsured medical expenses can be expensive, and that unlike expenses relating to health insurance, *see* RSA 458-C:2, I, the guidelines do not provide any offset for uninsured medical expenses prior to the application of the child support formula in RSA 458-C:2, I. Nevertheless, we need not concern ourselves with whether such a deduction should be given, because that is a matter best left for the legislature. Thus, we hold that the court may award uninsured medical expenses separate from the child support award pursuant to the guidelines, and affirm the trial court's award of uninsured medical expenses in this case.

█ The respondent argues that the trial court should have adjusted his child support obligation downward as a result of its order requiring him to pay uninsured medical expenses. RSA 458-C:5 allows for deviation from the guidelines and provides that:

> I. Special circumstances, including, but not limited to, the following, if raised by any party to the action or by the court, shall be considered and may result in adjustments in the application of support guidelines provided under this chapter. The court shall make written findings relative to the applicability of the following:
>
> (a) Ongoing extraordinary medical [or] dental [expenses] ....

"Just as RSA 458-C:5 authorizes the master to exercise her discretion to adjust the support award under the formula, it also authorizes the master's exercise of discretion in *not adjusting* the support award." *Wheaton-Dunberger*, 137 N.H. at 508. Thus, the fact that special circumstances exist does not mandate an adjustment to the respondent's child support obligation.

While the respondent's financial affidavit shows that he had a monthly income of $5,583 with $5,911 in monthly expenses, he testified that he did not list an additional $850 he earns from his job annually, and that he has consistently received an annual bonus each of the past nine years. The petitioner's monthly income was $1,360 with $3,414 in expenses. Given these circumstances, we find no error in the trial court's decision not to adjust the respondent's support obligation and therefore affirm.

■We hold, however, that extracurricular activity expenses are part of basic guidelines support. *See Lehr v. Lehr*, 720 So. 2d 412, 414 (La. Ct. App. 1998). Extracurricular activities fall into the same category of basic support as food, shelter and recreation. Absent any language to the contrary in the guidelines, or elsewhere, we conclude that such expenses are included in the parties' total support obligation. Thus, the court erred by requiring the respondent to pay for seventy-eight percent of the children's extracurricular activity expenses in addition to child support under the guidelines and we reverse its decision.

■We next address whether the court erred in refusing to adjust the respondent's support obligation under RSA 458-C:5, I (d). That provision provides that the trial court may adjust guidelines support for "Reasonable expenses incurred by the obligor parent in exercising visitation or physical custodial rights ...." The court denied the respondent's request that special circumstances warranted a deviation from the guidelines. RSA 458-C:5. Having reviewed the record, we do not find that the court erred in refusing to adjust the respondent's support obligation.

While he does not itemize his visitation expenses in his brief, the respondent did testify at the hearing that his visitation expenses are approximately $160 per month, which includes money spent on gasoline to transport the children to and from his home, entertainment expenses and money he spends buying clothing for the children. As discussed previously, the respondent's annual income is significantly more than the petitioner's income. The respondent also agreed in his proposed decree to provide round trip transportation for the children during his normal visitation periods. Finally, he conceded at the hearing that some of his expenses, such as buying the children clothing, are discretionary in nature. Thus, we affirm the trial court's decision declining to adjust the respondent's child support obligation in light of his visitation expenses.

■Finally, the respondent argues that the court erroneously increased his support obligation beyond the guidelines amount as a substitute for awarding alimony to the petitioner. Alimony should not be awarded under the guise of child support, as each is a separate concept. *See* 27C C.J.S. *Divorce* § 665 (1986). Alimony and child support are governed by different statutes. *See* RSA 458:17, :19 (Supp. 2001). We do not construe the trial court's decree as awarding alimony under the guise of child support. Rather, we construe the court's decision to be that an award of alimony pursuant to RSA 458:19 was *not* warranted in light of the respondent's obligation to pay the children's uninsured medical expenses.

*Affirmed in part; reversed in part.*

BROCK, C.J., and NADEAU and DUGGAN, JJ., concurred.