Portsmouth Family Division
No. 2003-101

IN THE MATTER OF SUSAN C. BARRETT
AND JOHN T. COYNE

Argued: October 15, 2003
Opinion Issued: February 3, 2004

*Susan C. Barrett,* by brief and orally, *pro se.*

*Dwyer & Donovan, P.A.,* of Portsmouth (*Elizabeth A. Donovan* on the brief and orally), for the respondent.

DALIANIS, J. The respondent, John T. Coyne, appeals an order recommended by a Marital Master (*Harriet J. Fishman,* Esq.) and

approved by the Portsmouth Family Division (*DeVries*, J.). We vacate and remand.

The record supports the following facts. Coyne and the petitioner, Susan C. Barrett, were divorced on August 22, 1996, in the Commonwealth of Pennsylvania. The parties agreed to share joint legal custody of their two daughters, Kathryn and Jacqueline, with Barrett having primary physical custody. Additionally, Coyne was ordered to pay child support.

Barrett and the children moved to New Hampshire in 1998. At approximately the same time, Coyne ceased communication with them, although he continued to pay child support. Kathryn attended Winnacunnet High School, a public secondary school in Hampton, during her freshman year. Kathryn had been diagnosed in 1997 with attention deficit disorder and she suffered emotional problems due to her estranged relationship with Coyne. As a result of both conditions, she failed her freshman year. Although Barrett met with the Winnacunnet administration, Kathryn was neither coded for special education nor provided with other assistance.

In order to help her daughter, Barrett decided to enroll her in private school. Kathryn took summer courses and qualified for acceptance as a sophomore at Tilton School (Tilton), a private secondary school. Despite the high cost of private school, Barrett believed that unless Kathryn attended private school she would continue to fail. When requested by Tilton to provide financial information, Coyne submitted the necessary forms without objection. Because of Coyne's and Barrett's financial status, Tilton did not give Kathryn significant financial aid.

Kathryn's grades improved upon her enrollment at Tilton and she passed both her sophomore and junior years. In 2002 Barrett suffered financial difficulties and asked Coyne to pay for Kathryn's tuition to enable her to attend Tilton in her senior year. Coyne refused Barrett's request.

Barrett filed a motion in the Portsmouth Family Division seeking an order that Coyne contribute financially towards Kathryn's senior year at Tilton. The trial court initially found, on October 2, 2002, that Coyne "[did] not have the ability to pay" any amount towards Kathryn's senior year at Tilton.

Barrett filed a motion for reconsideration, arguing that Coyne's ability to pay was greater than that presented to the court because Coyne had failed to include his current wife's income in his financial statements. The trial court reconsidered and ordered Coyne to pay $8,000 of Kathryn's school tuition.

On appeal, Coyne argues that the trial court erred in applying an "ability to pay" standard when ordering him to pay for Kathryn's private

school tuition in addition to child support. We will uphold the trial court's decision unless it is unsupported by the evidence or tainted by an error of law. *In the Matter of Peirce and Peirce*, 146 N.H. 611, 613 (2001).

While we have considered the issue of college education expenses, *see In the Matter of Breault & Breault*, 149 N.H. 359 (2003), the award of private secondary education expenses for a minor child is an issue of first impression for this court. Two statutes are relevant to our analysis: (1) RSA 458:17, I (1992), which provides that "the court shall make such . . . decree in relation to the support, education, and custody of the children as shall be most conducive to their benefit and may order a reasonable provision for their support and education"; and (2) RSA chapter 458-C (Supp. 2002), the child support guidelines, adopted by the legislature "to establish a uniform system to be used in the determination of the amount of child support," RSA 458-C:1.

In cases of statutory interpretation, we are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. *In the Matter of Coderre & Coderre*, 148 N.H. 401, 403 (2002). We interpret legislative intent from the statute as written, and, therefore, we will not consider what the legislature might have said or add words that the legislature did not include. *Id.* Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation. *Id.*

There exists an inconsistency between RSA 458:17, I, and RSA chapter 458-C. RSA 458:17, I, on its face appears to authorize an award of education expenses in addition to an award for child support. RSA chapter 458-C, adopted after RSA 458:17, I, however, purports to allow for deviations from the child support guidelines only when "the application of the guidelines would be unjust or inappropriate," RSA 458-C:4, II, IV, because of "special circumstances," RSA 458-C:5, which include "ongoing extraordinary . . . education expenses," RSA 458-C:5, I(a).

We consider all statutes concerning the same subject matter in interpreting any one of them and, where reasonably possible, we construe statutes as consistent with each other. *Coderre*, 148 N.H. at 404. When interpreting two statutes that deal with a similar subject matter, we construe them so that they do not contradict each other, and so that they lead to reasonable results and effectuate the legislative purpose of each statute. *Id.*

The purpose of RSA chapter 458-C is not only to ensure uniformity in determining the amount of child support, but also to ensure that both the custodial and non-custodial parents share in the support responsibility for their children, according to the relative percentage of each parent's

income. *See* RSA 458-C:1; *see also* RSA 458-C:2, II, IX, XI; RSA 458-C:3, I, II, III.

Through a complex scheme of definitions and formulae, the legislature provided guidelines from which the trial court first determines a parent's total child support obligation. *See* RSA 458-C:2, II, XI; RSA 458-C:3. The legislature has also authorized the trial court to deviate from those guidelines when "the application of the guidelines would be unjust or inappropriate," RSA 458-C:4, II, IV, because of the existence of "special circumstances," RSA 458-C:5. Such "special circumstances" include, as noted above, "ongoing extraordinary . . . education expenses." RSA 458-C:5, I(a).

■ Under normal circumstances a trial court need not consider private secondary education expenses when determining a non-custodial parent's child support obligation because all children are entitled to a public education. Instead, it is only when the trial court finds that "special circumstances" exist that it may require an obligor parent to contribute to private or specialized education. RSA 458-C:5, I(a). So, while RSA 458:17, I, read separately from the rest of the child support scheme, on its face would appear to authorize an award of private secondary education expenses in addition to the amount awarded under the child support guidelines, such a deviation, absent "special circumstances," would be inconsistent with the child support guidelines. *See* RSA 458-C:5. Therefore, a trial court may deviate from the child support guidelines to account for private secondary education expenses only after a finding that "the application of the guidelines would be unjust or inappropriate," RSA 458-C:4, II, IV, because of "special circumstances," RSA 458-C:5.

While this is an issue of first impression in New Hampshire, other jurisdictions have addressed the parameters of "special circumstances" for the purpose of ordering a non-custodial parent to contribute towards the private education of a minor child. These jurisdictions focus upon two conditions: (1) a demonstrated "special need" of the child; and (2) the non-custodial parent's "ability to pay." *See Solomond v. Ball*, 470 S.E.2d 157, 160 (Va. Ct. App. 1996); *In re Marriage of Stern*, 789 P.2d 807, 813 (Wash. Ct. App. 1990); *In re Marriage of Aylesworth*, 165 Cal. Rptr. 389, 394 (Ct. App. 1980). This approach is consistent with our own statute. *See* RSA 458-C:5.

■■ Therefore, when making a finding that "special circumstances" exist that warrant a deviation from the child support guidelines so as to require a non-custodial parent to contribute toward private secondary education expenses, the trial court must find that both the child has a

demonstrated "special need" and the non-custodial parent has "an ability to pay." Furthermore, when determining whether a demonstrated "special need" exists, the trial court may consider such factors as: (1) the child's attendance at private school prior to the separation and divorce; (2) the availability of satisfactory public education, including special education; (3) the child's academic performance; (4) the child's family and/or religious tradition; and (5) the child's particular emotional and/or physical needs. *See Ley v. Forman*, 800 A.2d 1, 14 (Md. Ct. App. 2002); *Lee v. Maier*, 728 A.2d 154, 156 (Me. 1999); *Solomond*, 470 S.E.2d at 160; *Wilson v. Wilson*, 559 So. 2d 698, 700 (Fla. Ct. App. 1990); *Stern*, 789 P.2d at 814; *Aylesworth*, 165 Cal. Rptr. at 394.

█ In this case the trial court required Coyne to contribute to the cost of Kathryn's private education without a finding of "special circumstances." We hold that this was error and remand for consideration of whether Kathryn's private education expenses constitute "special circumstances."

█ Additionally, Coyne argues that the trial court may not consider his current wife's income when determining whether to order him to contribute towards Kathryn's tuition. Coyne points to RSA 458-C:2, IV(b), which provides that when determining the gross income of a parent, that parent's spouse's income "shall not be considered as gross income to the parent unless the parent resigns from or refuses employment or is voluntarily unemployed or underemployed," and contends that, because neither condition is present in this case, such income may not, therefore, be considered. The circumstances in this case, however, deal, not with determining Coyne's gross income, but rather with determining whether to allow for a deviation from the child support guidelines. RSA 458-C:5, I(c) expressly allows the trial court to consider "[t]he economic consequences of the presence of stepparents." Therefore, upon remand the trial court may consider Coyne's current wife's income for the purpose of determining whether "special circumstances" exist so as to justify a deviation from the child support guidelines. *See* RSA 458-C:5, I(c).

Finally, we turn to Coyne's arguments that the trial court is precluded from awarding Barrett private secondary education expenses because she: (1) failed to pursue certain State and federal remedies; and (2) failed to inform Coyne of her decision to send Kathryn to private school, thus eliminating his ability to pursue those remedies.

█ Concerning the former argument, we hold that "the availability of a public education program and extensive federal and state guidelines regarding special education does not preclude a parent's decision to place a

child in a private school." *Lee*, 728 A.2d at 156. Rather, in evaluating the placement of a child in private school, the court should determine whether "special circumstances" warrant such placement and may consider the "availability of satisfactory public education, including special education" in its analysis of "special needs."

As to the latter argument, Coyne points to RSA 186-C:16-b, I and II, under which there exist statutory periods within which to pursue certain "special education" remedies. Coyne contends that because Barrett failed to inform him of her decision to place Kathryn in private school, she eliminated his ability to pursue those remedies on Kathryn's behalf, since by the time he knew of such placement the statutory periods had expired. We begin by noting that Coyne and Barrett share joint legal custody of Kathryn. "Legal custody refers to the responsibility for making major decisions affecting the child's welfare," 59 AM. JUR. 2D *Parent and Child* § 26 (2002), and legal custodians are entitled to make the major decisions regarding the health, education and religious upbringing of the child, ·*Chandler v. Bishop*, 142 N.H. 404, 412 (1997). Thus, either Barrett or Coyne is entitled to bring a petition for "special education" on behalf of Kathryn, if they are unable to make a joint decision.

The trial court, in ruling against Coyne, found that Coyne "had knowledge of his daughter's attendance at [Tilton]" and did nothing to pursue "special education" on her behalf, thus defeating his argument that his opportunity to pursue such education was eliminated. We have not been provided with a record of the first trial court hearing on October 2, 2002. Absent such a record, we assume, for the purposes of appeal, that the evidence supported the trial court's findings, and we limit our review to legal errors apparent on the record available to us. *See Dombrowski v. Dombrowski*, 131 N.H. 654, 663 (1989).

Though the trial court found that Coyne had knowledge of Kathryn's attendance at Tilton, it did not specify whether that knowledge arose within the relevant statutory time period. It is clear from the limited record available to us that Coyne knew of Kathryn's attendance at Tilton because he filled out the forms to determine her financial aid. Though it is not clear from the record exactly when he filled out those forms, we infer from the trial court's ruling denying him relief that his knowledge must have arisen within the relevant statutory time period. Coyne does not argue that the lack of a record has prejudiced him. The trial court did not.

commit any legal error and Coyne has presented us with no basis to overturn its ruling

Coyne also argues that his rights to due process and equal protection under the law were violated by the trial court's order. Because Coyne's constitutional arguments were not adequately briefed and argued, we decline to address them. *State v. Schultz*, 141 N.H. 101, 104 (1996).

*Vacated and remanded.*

BRODERICK, C.J., and NADEAU and DUGGAN, JJ., concurred; BROCK, C.J., retired, specially assigned under RSA 490:3, concurred.