Hillsborough-northern judicial district
No. 2004-288

IN THE MATTER OF TATJANA A. DONOVAN
AND ROBERT F. DONOVAN, JR.

Argued: December 9, 2004
Opinion Issued: April 1, 2005

*Bronwyn Asplund-Walsh*, of Franklin, by brief and orally, for the petitioner.

*Law Office of Joshua L. Gordon*, of Concord (*Joshua L. Gordon* on the brief and orally), for the respondent.

DUGGAN, J. The petitioner, Tatjana A. Donovan (the mother), appeals an order of the Superior Court (*Barry*, J.) reducing the amount of her former spouse's child support obligation based upon income imputed to her. The respondent, Robert F. Donovan (the father), cross-appeals, arguing that the trial court erred in refusing to modify the parties' permanent stipulation in their divorce decree. We affirm in part, reverse in part, vacate in part and remand.

The parties divorced in May 2000 and received joint legal custody of their two minor children. The mother was awarded primary physical custody, while the father obtained residual custodial rights. The parties' permanent stipulation incorporated a uniform support order that required the father to pay $1,599 per month in child support to the mother, subject to annual adjustment for inflation using the Consumer Price Index (CPI).

The father was required to pay an additional $150 per month for the children's extracurricular expenses. The parties also agreed to contribute to the children's educational expenses through college in an amount proportionate to their respective incomes at such time.

On October 23, 2003, the father filed a petition to bring forward and modify the divorce decree under the three-year review provision of RSA 458-C:7 (2004). He sought to reduce his child support obligation based upon his diminished earnings and his former spouse's ability to earn an income. He also asked the trial court to strike portions of the parties' permanent stipulation relating to child support.

The father is employed as a certified public accountant (CPA) at Ellacoya Networks in Merrimack. His monthly pay decreased by approximately $62 between 2000 and 2003. The mother home-schooled their children for four years prior to the parties' divorce and has continued to do so since, pursuant to the parties' agreement. Because of her home-schooling responsibilities, the mother has not engaged in full-time employment.

The trial court granted the father's request to modify his child support obligation, thereby reducing his monthly payment to $1,590. The trial court denied his requests to terminate his monthly payment of $150 for the children's extracurricular activities and to eliminate the parties' obligation to make proportionate contributions to their children's college expenses. The court also upheld the provision of the uniform support order that annually adjusts the father's child support obligation for inflation as reflected by the CPI.

On appeal, the mother argues that the trial court erred by modifying the father's child support obligation based upon income imputed to her without making a specific finding that she was voluntarily unemployed or underemployed. *See* RSA 458-C:2, IV(a) (2004). In his cross-appeal, the father argues that the trial court erred by ordering him to continue to pay for his children's extracurricular activities because these expenses are included in his total support obligation under the child support guidelines. *See In the Matter of Coderre & Coderre*, 148 N.H. 401, 406 (2002). He also argues that under RSA 458:17, XI-a (2004), the trial court erred in upholding the parties' stipulation that they would contribute to their children's college expenses. Finally, he argues that the court erred in refusing to strike the CPI provision because that provision is contrary to the statutory formula for computing child support. *See* RSA 458-C:3, II(a) (2004). We address each issue in turn.

*I. Underemployment*

The mother argues that the trial court erred by imputing income to her without making an express finding that she was voluntarily unemployed or underemployed under RSA 458-C:2, IV(a). Furthermore, she argues that even if an express finding is not required, the evidence does not support an implied finding of voluntary underemployment.

In matters of statutory interpretation, we are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. *In the Matter of Watterworth & Watterworth*, 149 N.H. 442, 445 (2003). We first examine the language of the statute and ascribe the plain and ordinary meanings to the words used. *Id.* We interpret legislative intent from the statute as written, and, therefore, we will not consider what the legislature might have said or add words that the legislature did not include. *Coderre*, 148 N.H. at 403. Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation. *Watterworth*, 149 N.H. at 445.

RSA 458-C:2, IV(a) provides that "[t]he court, in its discretion, may consider as gross income the difference between the amount a parent is earning and the amount a parent has earned in cases where the parent voluntarily becomes unemployed or underemployed, unless the parent is physically or mentally incapacitated."

█ The plain language of the statute does not mandate an express finding that the parent is voluntarily unemployed or underemployed. In contrast, other sections of RSA chapter 458-C explicitly require the trial court to make an express written finding. For example, RSA 458-C:5 (2004) provides that the trial court "shall make written findings" relative to the applicability of special circumstances that warrant a deviation from the child support guidelines. *See, e.g., In the Matter of Barrett & Coyne*, 150 N.H. 520, 524-25 (2004). When the legislature has failed to include such provisions in a statute, we presume that it did not intend the law to have that effect and will not judicially engraft those terms. *Appeal of Concord Natural Gas Corp.*, 121 N.H. 685, 691 (1981); *see also State v. Rothe*, 142 N.H. 483, 485 (1997). Therefore, we hold that RSA 458-C:2, IV(a) does not require an express finding of voluntary unemployment or underemployment.

Although an express finding is not required, we must determine whether the evidence supports the trial court's implied finding that the mother is underemployed in this case. Whether a party is underemployed is a question for the fact finder, whose decision will not be disturbed on

appeal if supported by evidence in the record. *West v. Turchioe*, 144 N.H. 509, 513 (1999). Trial courts have broad discretion to review and modify child support awards. *Nicolazzi v. Nicolazzi*, 131 N.H. 694, 696 (1989). They are in the best position to determine the parties' respective needs and their respective abilities to meet them. *See id.* Accordingly, we will set aside a modification order only if it clearly appears on the evidence that the court's exercise of discretion was unsustainable. *In the Matter of Jerome & Jerome*, 150 N.H. 626, 628 (2004).

In computing the father's child support obligation, the trial court relied upon his calculations on the child support guidelines worksheet. On the worksheet, the father attributed $952.60 to the mother as monthly gross income. The father based this figure on his belief that "although [the mother] is not currently working as a CPA, she has the ability to do so if she were to take the required courses to get up to speed." The father acknowledged that currently the mother is not certified to work as a CPA, but his attorney stated that, "as a CPA himself[,] [he] believes his former wife could at least obtain a job as a bookkeeper and earn at least $952 a month." The trial court's adoption of this figure in computing the father's child support obligation implies a finding that the mother is voluntarily underemployed.

■ This finding is not supported by the evidence in the record. The father's claim that the mother could obtain employment as a bookkeeper is speculation unsupported by any concrete evidence. Indeed, it is not clear from the father's allegations that the mother is currently qualified for such employment. Moreover, pursuant to the parties' agreement, the mother has been home-schooling their children for at least eight years, which prevents her from pursuing full-time employment. Furthermore, she "has been required to seek part-time employment, simply to make ends meet," and "has been working to the extent of her ability around the home schooling [of] her children." There is no evidence in the record concerning whether the mother could continue to home-school the children and earn the amount of income that the trial court imputed to her. We therefore vacate that part of the trial court's order modifying the father's monthly child support obligation based on income imputed to the mother.

*II. Extracurricular activities*

Next, the father argues that the trial court erred by requiring him to continue paying $150 per month for the children's extracurricular activities because such expenses are included in his child support obligation. *See In*

*the Matter of Coderre & Coderre*, 148 N.H. at 406. The mother argues that *Coderre* should not apply because she is home-schooling the children and must incur the cost of all of their extracurricular activities. Alternatively, she argues that her significantly low income and ongoing educational expenses on behalf of the children constitute special circumstances that warrant deviation from the guidelines. *See* RSA 458-C:5. We agree with the father.

The father argues that the trial court should have applied our holding in *Coderre*, 148 N.H. at 406, even though he agreed to pay $150 per month for the children's extracurricular activities in the parties' permanent stipulation and did not appeal this issue after the divorce decree was finalized. Under the child support guidelines, either parent may apply to the trial court for modification of the child support order every three years. RSA 458-C:7, I. At that time, the trial court must use the formula provided under RSA 458-C:3 to recalculate the parents' total support obligation based upon their current incomes.

In *Coderre*, we held that extracurricular activity expenses fall into the same category of basic support as food, shelter and recreation, and as such are included in the parties' total support obligation under the guidelines. *Coderre*, 148 N.H. at 406; *see also In the Matter of Arabian & Squillante*, 151 N.H. 109, 111 (2004). Because extracurricular expenses are part of basic guidelines support, they are included in the trial court's recalculation of the child support obligation at the three-year review. *See* RSA 458-C:3. Accordingly, the trial court erred in not applying our holding in *Coderre* when it recalculated the father's support obligation under the guidelines and required him to continue paying an additional $150 per month for extracurricular activities. *See Coderre*, 148 N.H. at 406.

The mother argues that this case should be distinguished from *Coderre* because she is home-schooling the children and the public school system does not subsidize the cost of their extracurricular activities. Our holding in *Coderre*, however, was not based upon the facts underlying the party's request for extracurricular expenses. *See id.* Rather, we examined the structure and purpose of RSA chapter 458-C to determine what expenses are part of general support under the guidelines. *See id.* at 403-06. Although extracurricular activities are included in basic guidelines support, ongoing extraordinary education expenses may constitute special circumstances that justify deviation from the guidelines. *Arabian*, 151 N.H. at 112. We agree with the mother that, on remand, the trial court

may consider whether special circumstances exist in this case in making adjustments to application of the guidelines. *See* RSA 458-C:5.

Thus, we vacate the trial court's decision requiring the father to continue paying $150 per month for extracurricular activity expenses in addition to his child support obligation under the guidelines. *See Coderre*, 148 N.H. at 406.

*III. College expenses*

Next, we address the father's argument that the trial court erred in refusing to strike the provision of the parties' permanent stipulation that requires them to contribute to their children's college educations. As part of the permanent stipulation, the parties agreed that each of them would "contribute to the cost of the children's education through college in proportion to their respective income at that time." At that time, the trial court had "broad discretionary powers" to order divorced parents to contribute to their children's college expenses under RSA 458:17, I (Supp. 2003) and RSA 458:20 (1992). *LeClair v. LeClair*, 137 N.H. 213, 217-18 (1993) (superseded by statute).

At the hearing on his petition to modify the divorce decree, the father asked the trial court to strike the portion of the permanent stipulation related to college expenses in light of the passage of House Bill 299, which amended RSA 458:17 to provide: "No child support order shall require a parent to contribute to an adult child's college expenses or other educational expenses beyond the completion of high school." RSA 458:17, XI-a. The amendment took effect on February 2, 2004, before the trial court's hearing on the father's petition. The trial court denied the father's request.

On appeal, the father argues that under the new statute, the trial court erred in denying his request to remove the college education provision from the prior court order. Thus, the issue before us is whether the new statute requires the trial court to vacate a pre-existing order that requires the parents to contribute to their children's college education.

It is clear that, at a minimum, the legislature intended to preclude the trial court from issuing a new court order on or after the effective date of the statute that would require a parent to contribute to an adult child's college expenses. *In the Matter of Goldman & Elliott*, 151 N.H. 770, 772 (2005). However, it is not clear on the face of the statute whether the legislature intended it to apply retroactively to orders already in existence prior to its enactment. The phrase "[n]o child support order shall require" may be interpreted to mean that as of the effective date of the statute, no

court may order a parent to pay college expenses in future divorce decrees. *See* RSA 458:17, XI-a. Alternatively, the phrase may be interpreted to mean that all past child support orders that include college expenses must be vacated. *See id.*

"Where the statutory language is ambiguous or where more than one reasonable interpretation exists, we review legislative history to aid in our analysis." *Appeal of Ann Miles Builder*, 150 N.H. 315, 318 (2003) (quotation omitted). House Bill 299 was proposed following our decision in *In the Matter of Breault and Breault*, which held that RSA 458:17, I, does not require that child support terminate when a child reaches the age of majority or graduates from high school. *In the Matter of Breault & Breault*, 149 N.H. 359, 362 (2003) (superseded by statute). In *Breault*, we affirmed our prior holding that the trial court may order parents to contribute to their adult children's post-secondary education. *Id.* at 363; *see also LeClair*, 137 N.H. at 220. This holding was consistent with our recognition that "the State has the dual legitimate interests of promoting higher education for its citizens, and of extending protections to children of divorce to ensure that they are not deprived of opportunities they otherwise would have received had their parents not divorced." *LeClair*, 137 N.H. at 225. Numerous States similarly have recognized, by statute or judicial opinion, the obligation of non-custodial parents to support their children's post-secondary educations. Goforth, *The Case for Expanding Child Support Obligations to Cover Post-Secondary Educational Expenses*, 56 ARK. L. REV. 93, 100 n.39 (2003).

The final version of House Bill 299 states that it is an act "removing judicial discretion to order a divorced parent to contribute to an adult child's college expenses." Laws 2004, ch. 1. In his report for the majority of the House Committee on Children and Family Law, Representative Thomas I. Arnold, Jr. stated that the bill "removes the court's discretion to make orders regarding the children's post-secondary education *at the time of their parent's [sic] divorce.*" N.H.H.R. JOUR. 161 (2003) (emphasis added). This report suggests that the legislature intended the statute to apply to future divorce decrees, but does not make clear whether the statute was intended to apply to post-enactment modifications to decrees that were issued prior to the change in legislation.

As a general rule, statutes are applied prospectively. *Eldridge v. Eldridge*, 136 N.H. 611, 613 (1993); *accord* 3A N. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 69:9, at 418-19 (6th ed. 2003) ("[Child] [s]upport statutes are given prospective operation only, unless the legislature has clearly indicated that retroactivity is intended."). "Because

every person is presumed to know the law and, therefore, to organize his or her conduct and affairs accordingly, notice or warning of a change in the law should be given in advance of such change." *Eldridge*, 136 N.H. at 613. When the legislature is silent as to whether a statute should apply prospectively or retrospectively, our interpretation turns on whether the statute affects the parties' substantive or procedural rights. *Appeal of Wal-Mart Stores*, 145 N.H. 635, 638 (2000). There is a presumption of prospectivity when a statute affects substantive rights. *Eldridge*, 136 N.H. at 613. "In the final analysis, however, the question of retrospective application rest[s] on a determination of fundamental fairness, because the underlying purpose of all legislation is to promote justice." *Appeal of Wal-Mart Stores*, 145 N.H. at 638 (quotation and brackets omitted).

We have held previously that statutory changes affecting parties' rights to post-divorce financial support would not be applied retroactively to pre-existing divorce decrees. *See, e.g., Henry v. Henry*, 129 N.H. 159, 161 (1987) (holding that amendments to alimony statute would apply only to orders based upon divorce decrees entered on or after the effective date of the amendments). Similarly, in *Walker v. Walker*, 116 N.H. 717, 718 (1976), we addressed the effect of a statutory reduction in the age of majority from twenty-one to eighteen years in determining the age of a child's emancipation. Absent any clear showing of the legislature's intent that the statute was to have retroactive effect, we held that the change in the age of majority would not affect preexisting divorce decrees under which a parent's support obligation would continue until the child became emancipated or reached the age of twenty-one. *Id.* Implicit in this holding was the recognition that the child's right to receive financial support is substantive in nature. *See id.* In contrast, we found that RSA 458-C:7, which permits modification of a child support order three years after the entry of the last order for support, is procedural in nature in that it does not mandate a change in child support but "simply opens up a new channel of inquiry into whether a modification is appropriate." *Eldridge*, 136 N.H. at 615. We conclude that RSA 458:17, XI-a affects substantive rights and thus the presumption of prospectivity must be applied. *See Eldridge*, 136 N.H. at 613. Because we find that the new law applies prospectively to court orders issued after February 2, 2004, we need not consider whether application of the amendment to vacate a pre-existing court order would violate the prohibition in Part I, Article 23 of the State Constitution against retrospective laws. *Cf. Goldman*, 151 N.H. at 772-75.

■ In this case, the court order requiring the parents to contribute to their children's college education predated the effective date of RSA 458:17, XI-a. Thus, we hold that RSA 458:17, XI-a does not mandate the trial court to vacate the provision of the parties' divorce decree that requires them to contribute to their children's college education in proportion to their incomes at the time that the children attend college.

*IV. Use of the Consumer Price Index*

Finally, the father argues that under the guidelines' child support formula, the CPI may not be used to adjust his child support obligation annually based on inflation because the CPI does not reflect actual changes in the parties' total net income. *See* RSA 458-C:3, II(a). The trial court upheld the CPI provision because "[t]he defendant was represented by counsel at the time of the divorce and this was a provision to which he agreed." We agree with the father and thus vacate this provision.

The child support guidelines generally instruct the trial court to set prospective support based upon current income figures. *See West*, 144 N.H. at 513. Under the statutory child support formula, the parents' total net income is multiplied by a percentage based upon the number of children, then the resulting total support obligation is divided between the parents in proportion to their respective incomes. RSA 458-C:3, I, II(a), (b). "Net income" is defined as "the parents' combined adjusted gross income less standard deductions published on an annual basis by the department of health and human services." RSA 458-C:2, VI. "This formula is known as the income-shares model and is based on the number of supported children and standardized deductions from the parents' combined gross incomes." *In the Matter of Plaisted & Plaisted*, 149 N.H. 522, 524 (2003) (quotation omitted).

In *Heinze v. Heinze*, 122 N.H. 358, 361 (1982), we upheld an escalation clause that automatically increased the obligor's support payment at the time of any wage increase based upon the percentage of his gross income that he was then paying for child support. We noted that this escalation clause "provides cost-of-living increases in support payments as the ability of the supporting party to undertake the obligation increases" and that its use would "reduce the need for parties to continually return to court to seek to modify support decrees." *Id.* In addition, we reminded triers of fact that they also should consider increases in the custodial spouse's income when drafting or modifying support orders. *Id.*

■ Unlike the escalation clause in *Heinze*, the CPI provision is not tied to changes in the parties' total net income. *See id.* The CPI provision states that the "[o]bligor's child support obligation shall be reviewed annually and adjusted for inflation in accordance with the Consumer Price Index." The use of this escalation clause is inconsistent with the child support guidelines because it requires adjustments to the father's support obligation that are independent of actual changes in the parties' incomes. *See* RSA 458-C:3, II.

In fact, the father's income decreased during the four years following the parties' final divorce decree due to his employer's company-wide salary reduction. Despite this decrease in net income, the father's support obligation increased from $1599 per month to $1828 per month by using the CPI as an automatic escalator. Thus, the father's support obligation no longer reflected the trial court's original computation under the guidelines. Because this escalation clause is not tied to changes in the parties' incomes and thus is not authorized under RSA chapter 458-C, we reverse the trial court's order denying the father's request to strike the CPI provision.

In light of the foregoing, we conclude that: (1) although an express finding of voluntary underemployment is not required, the trial court erred in calculating the mother's imputed monthly income; (2) the trial court erred in ordering the father to continue to pay for his children's extracurricular activities; (3) the trial court was not required to vacate the parties' original agreement that they would pay for their children's college expenses; and (4) the automatic escalation provision that adjusts the father's support obligation based on the Consumer Price Index must be stricken.

> *Affirmed in part; reversed in part; vacated in part; and remanded.*

BRODERICK, C.J., and NADEAU and GALWAY, JJ., concurred; DALIANIS, J., concurred in part and dissented in part.

DALIANIS, J., concurring in part and dissenting in part. While I agree with the majority on three of the issues on appeal, I disagree with its application of RSA 458:17, XI-a (2004) to the existing order in this case regarding payment of college expenses. Therefore, I respectfully dissent from that portion of the majority opinion.

The majority frames this issue in terms of whether or not RSA 458:17, XI-a requires trial courts to vacate all prior orders that provide for payment of children's college education. The majority concludes that,

instead of requiring all prior orders regarding payment of college expenses to be vacated, the statute applies only prospectively to orders entered after the date of its enactment.

I believe the issue before us, however, is not whether RSA 458:17, XI-a requires courts to vacate all previous orders for payment of college expenses; rather, the issue is whether the new statute requires courts to vacate orders regarding payment of college expenses that are challenged after the effective date of the statute either by a motion to modify or by nonpayment by the obligor. I believe the new statute leaves courts with no choice but to relieve a parent, no matter how wealthy he or she might be, from any legal obligation to assist his or her adult child with college expenses.

A court's power in custody, maintenance, and education of children in divorce and separation cases is conferred entirely by statute. *LeClair v. LeClair*, 137 N.H. 213, 217 (1993) (superseded by statute on other grounds). Concerning child support, parties may move for modifications every three years or when there is a substantial change in circumstances. RSA 458-C:7 (2004). An order for contribution to college expenses is a support order, *see In the Matter of Gilmore & Gilmore*, 148 N.H. 111, 113 (2002), and, as such, is modifiable for a substantial change of circumstances, *LeClair*, 137 N.H. at 221, including a change in the law.

Prior to the enactment of RSA 458:17, XI-a, any obligor who had previously been ordered to pay college expenses could file a motion to modify based upon a substantial change in circumstances, such as, for example, becoming unemployed. The obligor could request the court to reconsider his or her obligation and be entitled to relief from the order to contribute to college expenses, if the circumstances so warranted. Likewise an obligee who had no order for contribution toward college expenses could file a motion to modify and obtain such an order if the circumstances so warranted.

As the majority points out, RSA 458:17, XI-a is intended to prevent courts from issuing new orders with provisions requiring payment of college expenses. *In the Matter of Goldman & Elliott*, 151 N.H. 770, 772 (2005). When an existing support order is modified, however, a new child support order is issued. It follows that the respondent's motion to modify the past award of college expenses resulted in the court issuing a new order. Therefore, the statute applies, even under the majority's analysis.

A child's right to receive financial support may be substantive, as the majority suggests, but it is not immutable. Because I believe the majority

erred in its analysis of this and because I believe that all child support orders, including provisions for contribution to college expenses, are always modifiable, I respectfully dissent.