Hillsborough-southern judicial district
No. 2005-194

IN THE MATTER OF BARBARA F. BAZEMORE AND MARTIN L. JACK

Submitted: November 16, 2005
Resubmitted: March 7, 2006
Opinion Issued: April 11, 2006

*Barbara F. Bazemore,* by brief, *pro se.*

*Barry & Honorow, P.L.L.C.,* of Nashua (*Helen G. Honorow* on the brief), for the respondent.

DUGGAN, J. The petitioner, Barbara F. Bazemore, appeals an order of the Superior Court (*Hampsey,* J.) approving the recommendation of the Marital Master (*David S. Forrest,* Esq.) granting her petition for modification of child support, but imputing only $70,000 in income to the respondent, Martin L. Jack, for the purposes of calculating such support. We affirm.

The record supports the following facts. Bazemore and Jack were divorced pursuant to a decree dated April 22, 1998. Together they have one child, born June 23, 1991. The divorce decree incorporated the terms of a permanent stipulation providing, among other things, that "[s]pecial circumstances exist[ed] that justif[ied] no order of child support." Such "special circumstances" included the assets and incomes of each party, the custodial arrangement outlined in the permanent stipulation, the division of marital assets, and the division of responsibility for various child-related expenses.

Jack received his bachelor's degree from the Massachusetts Institute of Technology in 1971. From then until September 2001, he worked as a software engineer. At the time of the divorce in April 1998, he was earning wages of $10,354 per month, supplemented by investment income of $2,523 per month.

In September 2001, Jack voluntarily resigned from his employment, and thereafter supported himself with investment income. In May 2004, Bazemore informed Jack that she intended to seek court-ordered child support, motivating him to search for new employment. On July 27, 2004, Bazemore filed a petition for modification of the uniform support order pursuant to RSA 458-C:7 (2004), which permits an obligee to apply for a modification of an existing child support order three years after the entry of the last order of support without the need to show a substantial change of circumstances.

Among other things, Bazemore asserted that any "special circumstances" existing at the time of the original divorce decree had lapsed, and that Jack was voluntarily unemployed or underemployed. Citing RSA 458-C:2, IV(a) (2004), Bazemore urged the trial court to impute $160,000 in annual income to Jack for the purposes of calculating child support, as that was Jack's approximate annual salary in 2001, the year of his resignation. Jack argued that, were he to succeed in finding employment, he would likely be able to earn only $75,000 to $95,000 per year.

The trial court granted the petition for modification of child support and found that Jack was voluntarily unemployed. The court qualified its finding, however, by noting that Jack reasonably relied upon the parties' permanent stipulation when he terminated his employment, and that he did not do so with the intent of avoiding his child support obligation or thwarting Bazemore's ability to receive child support in an appropriate amount. Finding it unjust to impute $160,000 in income to Jack, the court instead imputed $70,000.

On appeal, Bazemore raises the following issues: (1) that the trial court erred by not using Jack's last earned wages for the purposes of imputing income after it found that he was voluntarily unemployed; (2) that the trial court's child support modification order is not in accordance with statutory guidelines or federal regulations; (3) that the amount of income actually imputed to Jack constitutes an unsustainable exercise of discretion by the trial court; (4) that the trial court exhibited an unfair bias against Bazemore, thereby denying her equal protection and due process; (5) that procedural deficiencies deprived her of due process; and (6) that she was deprived of due process due to ineffective assistance of counsel. We address each issue in turn.

We note at the outset that trial courts have broad discretion in reviewing and modifying child support orders. *In the Matter of Donovan & Donovan*, 152 N.H. 55, 59 (2005). Because trial courts are in the best position to determine the parties' respective needs and their respective abilities to meet them, we will set aside a modification order only if it clearly appears on the evidence that the trial court engaged in an unsustainable exercise of discretion. *Id.*

Bazemore first argues that the trial court erred by not using Jack's last earned wages of $160,000 for the purposes of imputing income after finding that he was voluntarily unemployed. We disagree.

RSA 458-C:2, IV(a) provides that in cases where a parent is found to be voluntarily unemployed or underemployed, a trial court, "in its discretion, may consider as gross income the difference between the amount a parent is earning and the amount a parent has earned." The trial court, after

applying RSA 458-C:2, IV(a) to the facts of this case, concluded that it would be unjust to impute income to Jack in the amount of $160,000, his annual salary at the time of his resignation in 2001, and instead selected the reduced amount of $70,000.

In matters of statutory interpretation, we are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. *Donovan*, 152 N.H. at 58. We examine the language of the statute, ascribing to its words their plain and ordinary meanings, and interpret it in the context of the overall legislative scheme and not in isolation. *In the Matter of Jerome & Jerome*, 150 N.H. 626, 628-29 (2004).

Bazemore argues that RSA 458-C:2, IV(a) grants the trial court the discretion only to decide whether to impute income, but not the discretion to determine the amount of income to impute. Thus, she urges us to interpret RSA 458-C:2, IV(a) as granting trial courts the discretion to impute income only in an amount measured against actual past earnings or to not impute income at all. We decline to adopt this overly rigid interpretation. Were we to do so, a trial court, upon finding that it would be unjust to impute as income the entirety of a parent's past salary, would have no choice but to impute no income at all. We will not interpret the statute to yield such a harsh and impractical result. *Cf. Carlisle v. Frisbie Memorial Hosp.*, 152 N.H. 762, 773-74 (2005).

The plain language of the statute states that the court, *"in its discretion, may* consider as gross income" the difference between the parent's current and past earnings when it finds that the parent is voluntarily unemployed or underemployed. RSA 458-C:2, IV(a) (emphasis added). In contrast, the following subsection states that the income of a parent's current spouse *"shall* be imputed" to the parent, to the extent that the parent had earned income in the past, in the event that the parent is voluntarily unemployed or underemployed. RSA 458-C:2, IV(b) (2004) (emphasis added). It is a general rule of statutory construction that the word "may" is permissive in nature, whereas the word "shall" makes enforcement of a provision mandatory. *See Town of Nottingham v. Harvey*, 120 N.H. 889, 895 (1980); *see also Appeal of Rowan*, 142 N.H. 67, 71 (1997). Where the legislature fails to include in a statute a provision for mandatory enforcement that it has incorporated in other, similar contexts, we presume that it did not intend the law to have that effect and will not judicially engraft such a term. *See Appeal of Concord Natural Gas Corp.*, 121 N.H. 685, 691 (1981).

The trial court here exercised its discretion not to consider the entire difference between the amount Jack was earning and the amount Jack had earned, but only to consider a portion of that difference. A court may exercise its discretion, consistent with the plain language of the statute, to

consider as gross income part of the difference and not the remainder. "[T]he statutory grant of a greater power typically includes the grant of a lesser power ... a bit of common sense that has been recognized in virtually every legal code from time immemorial ...." *O'Connell v. Shalala*, 79 F.3d 170, 177 (1st Cir. 1996) (citation and quotation omitted).

The dissent agrees with Bazemore's argument that RSA 458-C:2, IV(a) permits the trial court to cither impute the difference between Jack's past and present incomes, or impute no income at all. However, the dissent points out that the trial court could still order a reduced child support obligation for Jack on remand by relying on RSA 458-C:4, II (2004). The dissent argues that the trial court could make a written finding that "application of the guidelines would be unjust or inappropriate" in this case, *id.*, and thus, in effect, consider only a portion of the gross income attributable to Jack under RSA 458-C:2, IV(a).

The safety valve contained in RSA 458-C:4, II, however, is not that expansive. A trial court can only find that application of the guidelines is "unjust or inappropriate in a particular case, as determined by using the criteria set forth in RSA 458-C:5." RSA 458-C:4, II. Thus, to reach the same result in this case, a mere showing that the support order is "unjust or inappropriate" would be insufficient; the trial court would have to find a "special circumstance" as defined in RSA 458-C:5, I (Supp. 2005).

Two of these special circumstances may arguably be applicable to Jack. On remand, Jack might argue that the application of the guidelines is "unjust or inappropriate" in his case because he has a "[s]ignificantly high or low income." RSA 458-C:5, I(b). It is, however, unclear how this special circumstance applies, if it applies at all, when the income is imputed. Jack could also argue that the trial court should find "[o]ther special circumstances ... to avoid an unreasonably low or confiscatory support order." RSA 458-C:5, I(j). It is unclear that Jack could meet this test. In any event, a mere showing that the support order is "unjust or inappropriate" would be insufficient to avoid consideration of the entire difference between his current and previous salary as imputed income. *See* RSA 458-C:4, :5.

More fundamentally, it is unlikely that the legislature intended to force courts to take such a circuitous route to impute less than total earnings and thus permit indirectly what it prohibited directly. "The shortest distance between two points is a straight line, and we will not lightly presume that [the legislature] lost sight of so [rudimentary] a principle." *O'Connell*, 79 F.3d at 177.

■ Because we interpret RSA 458-C:2, IV(a) to permit, rather than require, a court to impute income based upon a voluntarily unemployed or

underemployed parent's prior earnings, we hold the trial court did not engage in an unsustainable exercise of discretion when it elected to impute income to Jack in a lesser amount. Having done so, we need not address Bazemore's argument that the trial court's modification order is not in accordance with statutory guidelines as that argument is premised upon Bazemore's claim that $160,000 should have been imputed as Jack's income.

■ Bazemore next argues that the trial court unsustainably exercised its discretion when it concluded that $70,000 was the appropriate amount of additional income to impute to Jack. She contends that "[t]he courts have ruled that the imputation must be based on 'objective facts' or 'facts in evidence at a hearing,'" and that the trial court improperly arrived at the figure without explanation. Bazemore, however, fails to provide any case law supporting her assertion. Moreover, the trial court's order was not bereft of explanation. The trial court noted that Jack became voluntarily unemployed in reasonable reliance upon the parties' permanent stipulation and not some desire to avoid child support obligations. The trial court made reference to documentation detailing Jack's efforts to obtain employment and credited his argument that a likely salary would be in the $75,000 to $95,000 range. Though the court's final imputed income figure of $70,000 falls slightly below that range, it is not so inadequate that we find it to be an unsustainable exercise of discretion.

Finally, Bazemore argues that she was denied due process and equal protection under the law as a result of procedural deficiencies, an unfair bias against her by the trial court, and the ineffective assistance of her attorney. She cites no authority in support of her claims and makes no showing of prejudice, instead presenting a series of unsupported grievances and accusations regarding the marital master, the trial court, and her attorney. In the realm of appellate review, a mere laundry list of complaints, without developed legal argument, is insufficient to warrant judicial review. *State v. Fernandez*, 152 N.H. 233, 239-40 (2005). Because she has not developed these arguments sufficiently to warrant appellate review, we decline to address them. *See id.*

Bazemore's other arguments on appeal, including that federal child support enforcement regulations, *see* 45 C.F.R. § 302.56 (2005), limit the trial court's discretion in the calculation of child support, are without merit and warrant no further discussion. *Cf. Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

*Affirmed.*

GALWAY, J., concurred; BROCK, C.J., retired, specially assigned under RSA 490:3, concurred; DALIANIS, J., with whom BRODERICK, C.J., joined, dissented.

DALIANIS, J., dissenting. In cases where a parent is found to be voluntarily unemployed or underemployed, a trial court, "in its discretion, may consider as gross income the difference between the amount a parent is earning and the amount a parent has earned." RSA 458-C:2, IV(a) (2004). The trial court, considering the facts of this case in the light of RSA 458-C:2, IV(a), concluded that it would be unjust to impute $160,000 in income to Jack, and instead selected the reduced amount of $70,000. Because I believe this to be error, I respectfully dissent.

As the majority correctly points out, this court is, in matters of statutory interpretation, the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. *In the Matter of Donovan & Donovan*, 152 N.H. 55, 59 (2005). In discerning legislative intent, we examine the language of the statute, ascribing to its words their plain and ordinary meanings, and interpret it in the context of the overall legislative scheme and not in isolation. *In the Matter of Jerome & Jerome*, 150 N.H. 626, 628-29 (2004).

Unlike the majority, I interpret RSA 458-C:2, IV(a) as granting trial courts the discretion to impute income only in an amount measured against actual past earnings or to not impute income at all. I believe that the plain language of the statute supports such a result.

The plain language of RSA 458-C:2, IV(a) states that a court, "in its discretion, may consider as gross income the *difference between the amount a parent is earning and the amount a parent has earned* in cases where the parent becomes voluntarily unemployed." (Emphasis added.) Thus, a court has the discretion to impute only the "difference" between prior and current earnings for a voluntarily unemployed parent. RSA 458-C:2, IV(a) makes no allowance for imputing merely a portion of that difference, or for a discretionary adjustment of the difference between prior and current earned incomes.

At the time of his resignation in 2001, Jack was earning an approximate annual salary of $160,000. He was earning no salary at the time the trial court calculated his child support obligation. Once the trial court decided to impute Jack's earned income, the plain language of RSA 458-C:2, IV(a) permitted it to impute only the difference between his past and present incomes. I conclude that, having exercised its discretion to impute Jack's earned income, the trial court should have imputed $160,000—the difference between his past and present incomes. By choosing to impute

merely a portion of that difference in incomes, the trial court engaged in an unsustainable exercise of discretion.

My conclusion would not preclude the trial court from reaching an identical result in this case. RSA chapter 458-C (2004 & Supp. 2005) sets forth certain guidelines, the purpose of which are to "establish a uniform system to be used in the determination of child support." RSA 458-C:1 (Supp. 2005). RSA 458-C:3 (2004) codifies the child support formula to be applied by New Hampshire courts when calculating child support obligation amounts. There is a presumption that the award amount resulting from the guidelines is correct, but that presumption may be rebutted by "[a] written finding or a specific finding ... that the application of the guidelines would be unjust or inappropriate in a particular case." RSA 458-C:4, II (2004). "Special circumstances" that may justify "adjustments in the application of support guidelines" include those "found by the court to avoid an unreasonably low or confiscatory support order, taking all relevant circumstances into consideration." RSA 458-C:5, I(j) (2004 & Supp. 2005). The party seeking an adjustment must demonstrate such special circumstances by a preponderance of the evidence, RSA 458-C:5, II (2004 & Supp. 2005), and the trial court must make written findings relative to their applicability. RSA 458-C:5, I.

We have recognized the right of trial courts to adjust support awards under the guidelines, either upward or downward, when they find that deviations are warranted. *In the Matter of Coderre & Coderre*, 148 N.H. 401, 404 (2002); *Wheaton-Dunberger v. Dunberger*, 137 N.H. 504, 508 (1993). A court must, however, make specific findings supporting the determination that application of the guidelines is unjust or inappropriate. *See In the Matter of Gordon and Gordon*, 147 N.H. 693, 700 (2002); *In the Matter of Crowe & Crowe*, 148 N.H. 218, 223 (2002). In *Gordon*, we vacated a child support order and remanded to the trial court for specific findings after concluding that the "terse explanation" justifying an adjustment was insufficient. *Gordon*, 147 N.H. at 699-700; *cf. In the Matter of Rohdenburg & Rohdenburg*, 149 N.H. 276, 279-80 (2003).

I believe that the majority oversimplifies my position when it states:

> The dissent argues that the trial court could make a written finding that "application of the guidelines would be unjust or inappropriate" in this case ... and thus, in effect, consider only a portion of the gross income attributable to Jack under RSA 458-C:2, IV(a).

It is possible that the end result of observing the statutory prescriptions of RSA 458-C:4, II and RSA 458-C:5, I, may, in Jack's case, have the same effect as simply imputing a portion of the difference between his prior and

current earnings. However, the legislature, by enacting RSA 458-C:4 and RSA 458-C:5, plainly intended to establish a statutory framework for the adjustment of support awards following application of the child support guidelines. Avoiding this framework for the purposes of expediency would relieve Jack of the burden of demonstrating, by a preponderance of the evidence, that special circumstances justify a downward adjustment to his support obligations. *See* RSA 458-C:5, II. Moreover, it would treat a discrete class of obligors—those voluntarily unemployed parents whose earning potential has materially decreased—differently from others for whom the "special circumstances" of RSA 458-C:5 may apply.

In this case, the trial court first should have determined whether it would impute the difference in Jack's earned income pursuant to RSA 458-C:2, IV(a). If so, the plain language of the statute dictates that amount to be $160,000. The court then should have calculated Jack's child support obligation in accordance with RSA 458-C:3. If the court found the resultant obligation to be unjust or inappropriate, based upon special circumstances demonstrated by a preponderance of the evidence, it could adjust the support obligation, and make written findings in relation to both the applicability of such special circumstances and the unjust or inappropriate nature of the resultant obligation. *See* RSA 458-C:4, II, :5, I; *see also Gordon*, 147 N.H. at 699-700.

The majority speculates that, on remand, Jack might argue that application of the guidelines is "unjust or inappropriate" in his case because of his "significantly high or low income," *see* RSA 458-C:5, I(b), but notes that it is unclear whether such an argument would be successful. It further suggests that he could argue that the trial court should find "[o]ther special circumstances" to "avoid an unreasonably low or confiscatory support order," *see* RSA 458-C:5, I(j), but again observes that Jack's ability to demonstrate such circumstances is unclear. Jack's ability to meet his burden of demonstrating special circumstances by a preponderance of the evidence, as required by RSA 458-C:5, is not for this court to determine in the first instance. The possibility that he may not be able to do so should not preclude this court from remanding this case for a determination consistent with the plain language of RSA chapter 458-C.

The majority observes, "[I]t is unlikely that the legislature intended to force courts to take a circuitous route to impute less than total earnings and thus permit indirectly what it prohibited directly." I disagree. The legislature explicitly stated that its purpose was "to establish a uniform system to be used in the determination of the amount of child support." RSA 458-C:1 (2004). To ensure such consistency, the legislature created a presumption that the difference should be imputed, if at all, in its entirety. RSA 458-C:2, IV(a), :4, II. It then put forth various criteria that, when

met, rebut the presumption, thus justifying imputation of some other amount. *See* RSA 458-C:4, II, :5. "[A] court engaged in the task of statutory interpretation must examine the statute as a whole, giving due weight to design, structure, and purpose, as well as to aggregate language." *O'Connell v. Shalala*, 79 F.3d 170, 176 (1st Cir. 1996). Because the majority's "reading of the [statute] cannot survive the application of this global standard," *O'Connell*, 79 F.3d at 176, I will not engage in guesswork to determine the "likely" intent of the legislature.

In applying the same standard in *O'Connell*, the First Circuit found no such presumption in the statute at issue. Rather, that court determined that Congress intended to grant the Secretary of Health and Human Services the power to adjust certain definitions as need be, and with little or no justification. *Id.* There, no other person or entity was engaged in a similar process, thus necessitating consistency of outcomes. *Id.*

Here, to the contrary, many judges must consider a myriad of factors in calculating each individual support award. By stating that courts should be able to impute, in the first instance, "part of the difference and not the remainder," the majority would obviate the special circumstances requirements of RSA 458-C:5, thus permitting judges to inconsistently calculate support awards that deviate from the guidelines.

Further, we interpret legislative intent from a statute as written and will not consider what the legislature might have said or add words that the legislature did not include. *See, e.g., Donovan*, 152 N.H. at 58. Because RSA 458-C:2, IV(a) provides only for the imputation, if at all, of the "difference" and not "part of the difference and not the remainder," we need not consider further the intent or motivation of the legislature in drafting it.

BRODERICK, C.J., joins in the dissent.