NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

6th Circuit Court-Concord Family Division
No. 2020-0080

IN THE MATTER OF LURA SANBORN AND JEFFREY BART

Argued: February 18, 2021
Opinion Issued: July 14, 2021

Orr & Reno, P.A., of Concord (Jeremy D. Eggleton and Judith A. Fairclough on the brief, and Mr. Eggleton orally), for the petitioner.

Sheehan Law Office, PLLC, of Concord (Patrick J. Sheehan on the brief and orally), for the respondent.

HICKS, J. The respondent, Jeffrey Bart (Husband), appeals, and the petitioner, Lura Sanborn (Wife), cross-appeals, a final decree of divorce issued by the Circuit Court (McIntyre, J.). Husband also appeals the trial court's order, issued after this appeal was filed, granting Wife's motion to enforce the temporary decree as to the payment of property taxes on the marital home. We affirm in part, vacate in part, and remand.

We briefly recite the following facts found by the trial court; additional facts will be recited below as needed to address specific issues raised by the parties. The parties were married in 2005 and have one child. Wife is employed as a librarian at a private school. Husband is involved in the operation of a family-owned candy business (GSCS) established by Husband's grandfather in 1927. At the time the final decree was issued, Husband was the controlling member of two limited liability companies that own and operate

GSCS and the property on which one of its stores is located. CMJ Associates, LLC (CMJ) is the entity that owns the real property housing one of GSCS's stores and several residential apartments.

Wife filed a petition for divorce in September 2017 and Husband cross-petitioned. The court issued a final decree of divorce in November 2019. Wife filed a motion for reconsideration and/or clarification and Husband filed a motion for reconsideration. The court corrected and clarified its final decree in minor respects, but otherwise denied both motions. This appeal and cross-appeal followed. Subsequently, Wife filed a motion asking the trial court to allow her to sell or refinance the marital home and to order Husband to cooperate with that process, which the trial court denied. Wife then filed a motion with the trial court to enforce the temporary decree with respect to taxes on the marital home. The trial court granted that motion and denied Husband's motion for reconsideration. Husband filed an assented-to motion to add a question with this court, seeking review of the trial court's order enforcing the temporary decree, which we granted. See Sup. Ct. R. 16(3)(b).

This appeal and cross-appeal now present the following issues for our review. Husband argues that the trial court erred in: (1) issuing a child support order that provided for "automatic modifications of child support in the future"; (2) adjusting the property distribution to account for marital funds used by Husband for his legal fees, but failing to make the same adjustment for Wife; and (3) modifying the final decree after an appeal had been filed. Wife argues that the trial court erred in: (1) determining Husband's gross income for purposes of child support; (2) dividing the marital estate unequally in favor of Husband; and (3) awarding final alimony with an amount and duration inconsistent with its own findings. Any issues raised in a party's notice of appeal but not briefed are deemed waived. See In the Matter of Ross & Ross, 169 N.H. 299, 304 (2016).

I. Husband's Appeal

Husband first challenges the final order's provision for child support, which states, in relevant part:

> Should [Husband] receive additional income (to include without limitation, guaranteed payments, wages, distributions, dividends or other compensation) such that his income in any tax year exceeds $9718/month or $116,616/year, he shall pay additional child support on such additional income. Any additional income shall be run through the New Hampshire Child Support Guidelines Worksheet. The additional income shall be calculated no later than April 15 and paid within ten days of the recalculation. For so long as [Husband] has an obligation to pay child support, the parties shall annually exchange all state and

2

federal tax returns (by April 15 of each year) and in addition, [Husband] shall provide all partnership returns within 30 days of their filing as well as draw/distribution records for CMJ and GSCS, as well as all schedules, 1099[s], and k-1s.

"We will not disturb the trial court's rulings regarding child support absent an unsustainable exercise of discretion or an error of law." In the Matter of Silva & Silva, 171 N.H. 1, 4 (2018).

Husband does not object to the annual exchange of tax returns, but challenges the provision for recalculation of child support, which, for ease of reference, we will refer to as the "escalation clause." Husband contends that the escalation clause violates the "clear statutory conditions for the review and modification of child support orders" set forth in RSA 458-C:7 by not requiring Wife to apply for a modification of the child support order and show a substantial change of circumstances. See RSA 458-C:7 (2018). He further contends that, because a trial court has "no discretion to modify any child support order beyond the date of 'notice' to" the opposing party, In the Matter of Birmingham & Birmingham, 154 N.H. 51, 58 (2006) (quotation omitted), the trial court lacked authority to "order[] that the new amount of child support would be owed retroactively to the beginning of the prior calendar year."

Husband's arguments are misplaced because the escalation clause is not a modification of a support order and, therefore, is not governed by RSA 458-C:7. Rather, recalculation of the amount of child support under the escalation clause merely implements the existing final order according to its terms. Cf. Madison v. Madison, 859 P.2d 1276, 1278, 1280 (Wyo. 1993) (escalation clause that adjusted child support obligation from a specified minimum to a specified maximum "to be reached dependent upon future increases in [obligor's] annual earnings" did "not violate the statutory requirement for changed circumstances" but, rather, reflected court's determination that "under all the relevant circumstances child support should be within a [specified] range . . . , and, all other things remaining equal, it should stay at that level"). Moreover, we see nothing in the remainder of RSA chapter 458-C that specifically prohibits such a clause.

We previously considered escalation clauses in Heinze v. Heinze, 122 N.H. 358 (1982), and In the Matter of Donovan & Donovan, 152 N.H. 55 (2005). In Heinze, we upheld "a clause automatically escalating the amount of child support with increases in the [obligor's] wages." Heinze, 122 N.H. at 360-61. Subsequently, in Donovan, we struck down a child support order provision that stated the "[o]bligor's child support obligation shall be reviewed annually and adjusted for inflation in accordance with the Consumer Price Index" (CPI). Donovan, 152 N.H. at 65 (quotation omitted).

Husband challenges the continued validity of Heinze, noting that it "was decided in 1982 before passage of the existing child support statute, including RSA 458-C:7 (circa 1991) which established the current statutory scheme for the modification of child support orders." As we noted above, however, implementation of the escalation clause does not modify the child support order contained in the final decree and nothing in the current statute precludes such a clause. We further note that we did not strike down the escalation clause in Donovan in 2005 as being either contrary to the modification statute or invalid per se. See Donovan, 152 N.H. at 65. Rather, as discussed below, we distinguished Heinze and concluded that the particular escalation clause at issue was "inconsistent with the child support guidelines because it require[d] adjustments to the father's support obligation that are independent of actual changes in the parties' incomes." Id. Accordingly, we conclude both that Heinze remains good law and that escalation clauses are not invalid per se. Cf. Petersen v. Petersen, 428 A.2d 1301, 1303 (N.J. 1981) (stating, in reviewing "an escalation clause relating to alimony and child support that is part of a matrimonial agreement incorporated in a judgment of divorce," that "[t]here is no sound reason for considering an escalation clause to be invalid per se").

We now consider whether the particular escalation clause used in this case is valid. Wife contends that the escalation clause in this case is analogous to the one we upheld in Heinze, and unlike the clause we struck down in Donovan, because the order in this case "directly ties the annual adjustment, if any, to the actual changes, if any, in the parties' incomes." We agree. As we explained in Donovan, the statutory child support formula in New Hampshire "is known as the income-shares model," under which "the parents' total net income is multiplied by a percentage based upon the number of children, then the resulting total support obligation is divided between the parents in proportion to their respective incomes." Donovan, 152 N.H. at 64 (quotation omitted); see RSA 458-C:3, I, II(a), (b) (2018). We held that the escalation clause in Donovan violated the statutory scheme because, "[u]nlike the escalation clause in Heinze, the CPI provision [was] not tied to changes in the parties' total net income." Donovan, 152 N.H. at 65. The escalation clause in this case does not suffer from the same defect.

Here, the escalation clause is triggered if Husband's "income in any tax year exceeds $9718/month or $116,616/year," and, thus, is tied to changes in Husband's income. The order also directs that Husband's additional income, if any, "shall be run through the New Hampshire Child Support Guidelines Worksheet" to determine the amount of Husband's additional child support obligation. Because the order requires "the parties" to "annually exchange" their tax returns, we construe the order to require that Wife's income will also be "run through the New Hampshire Child Support Guidelines Worksheet" to calculate the total support obligation and the parties' respective shares. See Donovan, 152 N.H. at 64. Accordingly, we do not find the terms of this escalation clause inconsistent with the statutory scheme. Cf. RSA 458-C:4, II

4

(2018) (creating rebuttable presumption "that the amount of the award which would result from the application of guidelines provided under this chapter is the correct amount of child support"); Glew v. Glew, 734 A.2d 676, 678, 679, 681 (Me. 1999) (concluding that judgment requiring parties to recompute support obligation at the end of each calendar year did not violate public policy given that trial court interpreted it to require such computation "based on the child support guidelines").

Husband nevertheless argues that the order is erroneous because, before he can be obligated to pay a new child support amount, he "must be afforded the opportunity to challenge the strict application of the child support guidelines and to allege whether special factors are present that might render the new amount unjust or inappropriate under existing circumstances at the time." He also argues that the order is "patently unfair in that it only calls for the automatic modification of child support in the event that [his] income increases, but not if his income decreases." We are not persuaded. The order does not preclude Husband from returning to court for a modification if a subsequent decrease in his income, or other "special factors" he may allege, constitute a substantial change in circumstances from those existing at the time of the final decree. See Heinze, 122 N.H. at 361; RSA 458-C:7, I(a); see also Madison, 859 P.2d at 1280 (noting that "escalation clause [did] not diminish the discretion of the district court to modify child support in the face of changed circumstances"). For all of the foregoing reasons, we uphold the escalation clause.

Husband next contends that the trial court erred in inconsistently treating his and Wife's withdrawals of marital funds to pay their respective legal fees. After noting that Husband had withdrawn approximately $64,098 from a CMJ investment account to pay his legal fees during the divorce, the trial court stated that Wife "should not have to bear the cost of [Husband's] legal fees." Accordingly, the court ruled that Husband's legal fees would "be treated as an advance of his share of the property distribution" and that "[t]he property distribution therefore should take into account [Wife's] $65,000 debt incurred for legal fees as a commensurate distribution."

Husband argues that the court failed to account for $53,259 that Wife withdrew from her checking, money market, and investment accounts to pay her attorneys and experts. He contends that by failing to adjust the property distribution to account for that withdrawal, the trial court erred. He asserts:

> Having found that the use of marital assets by one party to pay their legal fees has the effect of requiring the other spouse to pay for the other's attorney's fees . . . the trial court was then required to make an adjustment to the overall division of the marital estate to account for [Wife's] use of the $53,259.

5

This is especially so, Husband argues, when the trial court denied Wife's request that Husband be ordered to pay a portion of her legal fees due to Husband's unwillingness to cooperate with discovery. In denying that request, the trial court not only found no applicable exception to the American Rule that each party pay his or her own legal fees, but also noted that "[i]n this case, as in Hampers, the attorney's fees issue has been addressed in the context of the property division." See In the Matter of Hampers & Hampers, 154 N.H. 275, 291 (2006) (noting that when the trial court permitted the wife "to retain the sums paid by the [husband] for her attorney's fees, the court made these fees part of the final property distribution"). It could be reasonably inferred from this statement that the court intended the property division to address all legal fees owed or previously paid with marital funds.

The property division, however, only accounted for husband's $64,098 CMJ withdrawal and Wife's $65,000 debt from legal fees; it did not list the $53,259 that the trial court found Wife had withdrawn to pay her litigation expenses. Because the court's statement that it dealt with attorney's fees in the property settlement and its finding that Wife used an unaccounted-for $53,259 in marital funds to pay attorney's fees present an apparent conflict that we cannot reconcile, we vacate the property settlement and remand for reconsideration of this issue.

Husband next challenges the trial court's order, issued after we accepted this appeal, granting Wife's motion to enforce the temporary decree as to the payment of taxes on the marital home. The temporary decree had awarded Wife temporary and exclusive use of the marital home but had provided that the "parties shall equally share the property tax bill for the marital home." The final decree, by contrast, awarded the home to Wife and, as part of the property division, provided that she "shall be responsible for the payment of the . . . real estate taxes for this property and all expenses for this property."

Husband argues that because property taxes are an on-going expense for purposes of Family Division Rule 2.29(B)(1)(d), the order for their payment became effective upon issuance of the clerk's notice of decision and, therefore, such taxes became Wife's "sole responsibility upon issuance of the Final decree." He further argues that granting Wife's motion as to the payment of property taxes had the effect of modifying the final decree, and that the trial court lacked jurisdiction to do so after an appeal to this court had been filed. Wife counters that property taxes are not an on-going expense under Rule 2.29(B)(1)(d), and notes her reliance before the trial court on Rule "2.29(B)(1)(a) for the proposition that, during the appeal, the Temporary Decree remained in effect." She also argues that the trial court had jurisdiction to grant her motion because its order "was a status quo preservation ruling, nothing more."

6

In pertinent part, Rule 2.29(B) provides:

1.  The following orders are effective upon the issuance of the clerk's notice of decision, unless the court specifies, either orally or in writing, another effective date:
   a. Temporary orders;
   b. Parenting plans;
   c. Uniform support orders;
   d. Orders for alimony or payment of on-going expenses; and
   e. Provisions concerning the welfare of a child or the safety of a party, at the discretion of the court.
   . . ..
4.  If any party files an appeal, all orders described in subsection 1 shall continue in effect until the supreme court mandate or the conclusion of such further proceedings as the supreme court may order, whichever is last.  During this period, no orders as to marital status or parentage or as to property division shall take effect.

Fam. Div. R. 2.29(B).

Our case law, in turn, holds that, "[g]enerally, a decree issued by the trial court does not go to final judgment if a timely appeal is taken."  In the Matter of Nyhan & Nyhan, 151 N.H. 739, 745 (2005).  Accordingly, "where a final order replaces a previously issued temporary order, the temporary order remains in effect during the pendency of any appeal unless the trial court specifically orders that the final order should remain in effect pending resolution of the appeal."  Gray v. Kelly, 161 N.H. 160, 167 (2010).  "While, in appropriate cases, a trial court may order that a final order remain in effect during the pendency of an appeal, the general rule remains that timely appealing a trial court's final order stays it from taking effect."  Id. at 167-68.

Reading Rule 2.29(B) as a whole and in light of our precedent, we conclude that the phrase "[o]rders for . . . payment of on-going expenses" does not extend to a provision that forms part of the final decree's property division and that allocates responsibility for payment of property-related expenses. Here, the trial court did not specifically order that the final decree's provision making Wife solely responsible for the payment of real estate taxes on the marital home would remain in effect during the pendency of an appeal. Accordingly, pursuant to Rule 2.29(B)(4), the filing of this appeal stayed that provision of the final decree's property division from taking effect, and the temporary decree's provision for equal sharing of the property tax obligation remained in effect as a "temporary order" during the pendency of this appeal. Fam. Div. R. 2.29(B)(1)(a); Gray, 161 N.H. at 167-68.

7

Husband also contends that the trial court lacked jurisdiction to modify the final decree's provision regarding property taxes because "[a]fter the appeal has been perfected, this Court is vested with the exclusive power and jurisdiction over the subject matter of the proceedings, and the authority and control of the lower court with reference thereto are suspended." Rautenberg v. Munnis, 107 N.H. 446, 447 (1966) (quotation omitted). We reject Husband's argument because the trial court's order did not modify the final decree, but, rather, enforced the temporary decree which, as noted above, remained in effect as a matter of law. As such, we agree with Wife that the order "was a status quo preservation ruling" within the trial court's jurisdiction. See id. at 448 (noting that trial court "has adequate authority and jurisdiction to preserve the status quo" during pendency of appeal).

## II. Wife's Cross-appeal

Wife first challenges the trial court's determination of Husband's income for purposes of calculating child support, arguing that it is unsupported by credible evidence and "at odds with [the trial court's] own findings of fact." She asserts that "[t]he only evidence supporting the trial court's determination of [Husband's] income was testimony the trial court itself deemed 'not credible.'"

Husband's child support obligation was based on an income of $9,718 per month, which, in turn, appears to be based on Husband's financial affidavit and his testimony at the final hearing. Wife contends this income determination conflicts with a number of her proposed factual findings granted by the court, including findings that Husband's "testimony regarding his total current income is not credible" and that it was "appropriate for th[e] Court to use the 2018 tax returns as the basis for [Husband's] income." We find no inconsistency.

At the hearing on the merits, Husband explained that the income figure on his financial affidavit was derived from his 2018 tax returns. The court appears to have credited Husband's testimony regarding his income from GSCS, but disbelieved his testimony regarding his income from CMJ. For instance, the court found that the rental income from CMJ was $3,103.91 per month, as calculated from the 2018 tax return schedule for CMJ, rather than $1,384.18 as Husband testified and stated on his financial affidavit. The court also disbelieved Husband's testimony that a nearly $40,000 withdrawal from CMJ was a loan, and treated that amount as income. In its final order, the trial court recalculated Husband's child support for various periods between February 2018 to November 2019 and ordered Husband to pay a total arrearage of $9,310. Accordingly, the trial court accounted for any discrepancies between Husband's asserted income and what it found to be his actual income as calculated from the 2018 tax returns. Because any similar discrepancies in succeeding years will be dealt with through the escalation clause we upheld above, we find no reversible error.

8

We similarly reject Wife's argument that the trial court erred in omitting Husband's capital gains income from its calculation of his gross income for child support purposes. At oral argument, Wife's counsel conceded that Husband's capital gains for 2018 were included in his income for child support purposes for that period, but appears to contend that those gains should have been used in determining his income for child support going forward. Because the escalation clause we upheld above should adequately account for future capital gains, however, we find no reversible error.

Wife next argues that the trial court erred in making a disproportionate distribution of the marital estate to Husband. The court divided the marital estate "slightly unevenly," awarding 55% to Husband, "recognizing the inherited nature of the assets that created his livelihood and supported the marital lifestyle," and 45% to Wife. Wife argues that this allocation "was unjust, inequitable and not supported by the facts."

"The trial court is afforded broad discretion in determining matters of property distribution when fashioning a final divorce decree." Silva, 171 N.H. at 9. "We will not overturn a trial court's decision on these matters absent an unsustainable exercise of discretion or an error of law." Id. "If the court's findings can reasonably be made on the evidence presented, they will stand." Id.

RSA 458:16-a provides that in ordering an equitable division of property between the parties, the court "shall presume that an equal division is an equitable distribution of property, . . . unless the court decides that an equal division would not be appropriate or equitable after considering one or more" enumerated factors. RSA 458:16-a, II (2018). Wife argues that a disproportionate allocation in Husband's favor was erroneous where "all of the factors but one favor an equal distribution between the parties—and some, including [Husband's] diminishment of the marital estate by more than $230,000—actually require a disproportionate distribution to" her. As Husband points out, however, we have noted that "[t]he court need not consider all of the enumerated factors or give them equal weight." Silva, 171 N.H. at 11.

Here, the court gave dispositive weight to factor (n): "The value of any property acquired by gift, devise, or descent." RSA 458:16-a, II(n). The court explained that "[t]he candy business and the property in which it is located have been in [Husband's] family for nearly 100 years. The business and property were inherited and/or gifted to [Husband]. Therefore, the Court finds that pursuant to RSA 458:16-a, II (n), an unequal distribution is appropriate."

Wife does not dispute that the properties at issue were inherited by and/or gifted to Husband, but argues that "the vast majority of his interest in these properties was obtained almost ten years into the parties' marriage" and

that the properties were "nevertheless marital properties in which both parties earned an equal interest through their diverse contributions to the marriage." She further argues that the court's finding that Husband inherited these properties "might support ensuring that he emerge from the divorce with these assets, but not at [her] expense." We disagree. The statute explicitly allows the court to conclude, on the basis that property was gifted or inherited, "that an equal division would not be appropriate or equitable." RSA 458:16-a, II. Where Wife does not challenge the underlying factual finding that the properties were gifted and/or inherited, we conclude that "the record establishes an objective basis sufficient to sustain the [trial court's] discretionary judgment" as to the unequal property division. Silva, 171 N.H. at 4 (quotation omitted) (discussing standard for sustaining an exercise of judicial discretion); see id. at 9 (noting that we will not overturn a trial court's decision on property distribution "absent an unsustainable exercise of discretion or an error of law").

Finally, Wife challenges the amount and duration of the final alimony award. She asserts that the trial court inexplicably ordered temporary alimony of $1,500 per month "based on a professed income by [Husband] of $8,901 per month," but awarded $1,000 per month alimony when it found Husband had a higher income of $9,718 per month. She also asserts that the trial court found her request for a 72-month award of alimony to be reasonable, but granted a 69-month award. She argues that the amount and duration of the final alimony award are inconsistent with the court's own findings.

We agree with Wife that the trial court's final alimony award appears to be inconsistent with certain of its factual findings. Specifically, the court granted Wife's request for a finding that "[c]ontinuation of the existing alimony order, which was established based upon income less than what the Court finds [Husband] to be earning now, is reasonable." It also granted Wife's requested finding that "[t]he amount and duration of alimony sought by [Wife] is reasonable considering [certain statutory factors]." Because we cannot resolve the apparent inconsistency, we vacate the alimony award and remand for reconsideration by the trial court.

Affirmed in part; vacated in part; and remanded.

HANTZ MARCONI and DONOVAN, JJ., concurred.