Franklin Family Division
No. 2007-840

IN THE MATTER OF JOSEPH GOULART, JR. AND MARCIA GOULART

Argued: September 16, 2008
Opinion Issued: January 30, 2009

*Wiggin & Nourie, P.A.*, of Manchester (*Doreen F. Connor* on the brief and orally), for Joseph Goulart, Jr.

*Puckhaber Law Offices, PLLC*, of Concord, for Marcia Goulart, filed no brief.

BRODERICK, C.J. The petitioner, Joseph Goulart, Jr., appeals from an order of the Franklin Family Division (*Gordon*, J.), entered on the recommendation of the Marital Master (*Geiger*, M.), to assist with his son's college education expenses, as he agreed to do in the stipulated parenting plan. We reverse and remand.

The record supports, or the family division found, the following facts. Joseph and Marcia Goulart are the parents of one child, a son born in 1990; the couple was divorced in November 2005. The final decree of divorce from the Merrimack County Superior Court (*McGuire*, J.) "approved and incorporated" a permanent stipulation, a stipulated parenting plan, and a stipulated uniform support order. The stipulated parenting plan includes paragraph I ("OTHER PARENTING AGREEMENTS"), which reads in pertinent part:

> 1. *Post Secondary Education*
>
> The parties are aware of the statutory provisions prohibiting the Court from ordering any parent to contribute to expenses for an adult child. Notwithstanding said prohibition, the parties agree that after [their son] uses his best efforts to secure scholarships and grants, but not student loans, that Joseph shall be responsible for payment of [their son's] college educational expenses, including, but not limited to, tuition, room, board, books, fees, and reasonable spending money.

During the negotiation of the stipulated parenting plan and at the time of its approval by the court, Marcia Goulart was represented by her current counsel and Joseph Goulart was represented by prior counsel.

In February 2006, Joseph Goulart filed a motion to strike paragraph I(1) of the stipulated parenting plan, arguing that the provision was "unenforceable as a matter of law," and that the superior court did not "have the authority to order [him] to pay for [his son's] college expenses." After a hearing, the Superior Court (*Hollman*, J.) deemed the issue not ripe because the Goularts' son was entering his junior year of secondary school and would not be applying to colleges until his senior year.

In July 2007, Joseph Goulart filed a motion to define his obligation regarding college expenses, and again maintained that the court could not obligate him to pay his son's college-related expenses. After a hearing, the family division ruled:

> The Court fully expects Joseph Goulart, Jr. to assist with [his son's] educational expenses as he agreed to in the Final Parenting

Plan, and he is herewith ordered to do so. His Motion to Define Obligation Regarding College Expenses is granted accordingly.

This appeal followed.

On appeal, Joseph Goulart contends that the family division has no statutory authority to enforce a college education funding obligation in a divorce that post-dates RSA 458:17, XI-a (repealed October 1, 2005; re-codified as RSA 461-A:14, V). Specifically, he argues that because the legislature "expressly repealed the [c]ourt's authority to issue [an order obligating him to pay his adult son's college education expenses]," the court "lacked subject matter jurisdiction to enter [such] an [o]rder."

RSA 461-A:14, V (Supp. 2008) (the statutory prohibition) reads:

No child support order shall require a parent to contribute to an adult child's college expenses or other educational expenses beyond the completion of high school.

The statute was effective October 1, 2005; its identically-worded predecessor, RSA 458:17, XI-a, was effective February 2, 2004. The Goularts' divorce decree was dated November 2, 2005.

"The court's powers in custody, maintenance, and education of children in divorce and separation cases are conferred entirely by statute." *LeClair v. LeClair*, 137 N.H. 213, 217 (1993) (superseded by statute on other grounds). "We afford broad discretion to the trial court in divorce matters, and will not disturb the trial court's rulings regarding child support absent an unsustainable exercise of discretion or an error of law." *In the Matter of Gilmore & Gilmore*, 148 N.H. 111, 112 (2002). In those counties where the judicial branch family division is operational, the legislature has granted it exclusive jurisdiction with regard to divorce matters. RSA 490-D:2, I, :5 (Supp. 2008); *see Daine v. Daine*, 157 N.H. 426, 427 (2008).

The superior court's (prior to the implementation of the family division in Merrimack County) approval of the parties' stipulated parenting plan made the stipulation an order. *See In the Matter of Cole & Ford*, 156 N.H. 609, 612 (2007). Further, and for the purposes of this appeal only, we assume without deciding that the order was a support order, *cf. In the Matter of Donovan & Donovan*, 152 N.H. 55, 66 (2005) (*Dalianis*, J., dissenting) (an "order for contribution to college expenses is a support order").

Having previously found the statutory language of "[n]o child support order shall require" to be ambiguous, we have reviewed the statute's legislative history on several occasions. *See, e.g., In the Matter of Goldman & Elliott*, 151 N.H. 770, 772 (2005); *Donovan*, 152 N.H. at 61-62; *In the Matter of Forcier & Mueller*, 152 N.H. 463, 466 (2005). While our determination of ambiguity stemmed only from the statutory language's

lack of clarity as to whether the legislature intended retroactive or prospective application of the statute, *Donovan*, 152 N.H. at 61-63; *see Forcier & Mueller*, 152 N.H. at 466, we concluded that, with regard to the intent behind the statutory prohibition:

> ▉ [I]t is clear that, at a minimum, the legislature intended to preclude the trial court from issuing new court orders requiring a parent to contribute to an adult child's college or other educational expenses on or after February 2, 2004.

*Goldman & Elliott*, 151 N.H. at 772; *see Donovan*, 152 N.H. at 61.

In *Goldman & Elliott*, the parents of two minor children were divorced in 1991. In its order, the superior court indicated that it made no order regarding college, trusting that the parents could discuss and agree upon that issue, in spite of the court's statutory authority at that time to order divorced parents to contribute toward their children's college expenses. Twelve years later, in August 2003, the mother filed a motion to bring forward and modify existing child support, in which she sought contribution for college expenses for their then twenty-two-year-old son, who was enrolled as a full-time student at the University of New Hampshire. The father objected and a hearing was scheduled for March 11, 2004. On February 4, 2004, however, the statutory amendment and its prohibition became effective. *Goldman & Elliott*, 151 N.H. at 771. The superior court then submitted an interlocutory transfer without ruling with the following question for our resolution:

> Does the [statutory amendment] preclude the Court from considering contribution of college educational expenses for an adult child when the Motion for college contributions was filed prior to the enactment of the Amendment but the hearing was scheduled after the effective date of the Amendment?

*Id.* (brackets omitted). We responded in the affirmative. *Id.*

We added the following dicta:

> Because the [mother's] opportunity to have the trial court consider ordering the [father] to contribute to their adult son's college expenses derived solely from statute and no final judgment had been rendered, the statutory amendment deprived the court of jurisdiction over the subject matter.

*Id.* at 775 (quotation and brackets omitted). As neither party has argued to the contrary, we follow our earlier dicta for the purposes of this appeal.

■■ Accordingly, under the statutory amendment, the superior court and the family division are deprived of subject matter jurisdiction to either approve or enforce a provision in a stipulated parenting plan that requires parents to contribute to their adult child's college expenses. Consequently, we agree with Joseph Goulart's argument in his brief that the family division erred when it stated, "[Goulart] was aware of and informed as to the legislation concerning college, but that with the advice of counsel, he knowingly waived that provision." Neither the superior court nor the family division had subject matter jurisdiction to either approve paragraph I(1) of the Goularts' parenting plan or issue an order requiring Joseph Goulart to pay his adult child's college education expenses; Goulart's "waiver" could not confer subject matter jurisdiction where it did not exist; and any such orders were void. *See, e.g., Close v. Fisette,* 146 N.H. 480, 483 (2001) ("A decision rendered by a court without subject matter jurisdiction is void. A challenge to subject matter jurisdiction may be raised at any time during the proceeding, including on appeal, and may not be waived." (citation omitted)).

Joseph Goulart filed his motion as one to define his obligation regarding college expenses. We read it as a motion, in essence, to modify the permanent stipulation by striking paragraph I(1) of the stipulated parenting plan. In that limited sense, we agree with the family division's granting of Joseph Goulart's motion to define his obligation. As the family division should have modified the permanent stipulation by striking paragraph I(1), however, it erred as a matter of law in ordering Joseph Goulart to contribute to his adult son's college expenses. Consequently, we reverse that portion of the family division's order and remand for further proceedings consistent with this opinion.

The superior court's approval of the stipulated parenting plan, made erroneous due to the plan's inclusion of the provision concerning college expenses, was apparently based upon a good-faith mutual mistake of law by all concerned. Consequently, questions may arise as to whether the parties justifiably relied upon the college expenses agreement in formulating their stipulations, and whether any such reliance affected a fair and equitable property division in this case. *See* RSA 458:16-a, II (2004) ("When a dissolution of a marriage is decreed, the court may order an equitable division of property between the parties."). We voice no opinion here as to whether Marcia Goulart is entitled to reopen the property settlement in this case, and leave such consideration to the family division on remand. *See In the Matter of Birmingham & Birmingham,* 154 N.H. 51, 57 (2006) ("A property settlement in a divorce decree is a final distribution of a sum of

money or a specific portion of the spouses' property and is not subject to judicial modification on account of changed circumstances. Such a property distribution will not be modified unless the complaining party shows that the distribution is invalid due to fraud, undue influence, deceit, misrepresentation, or mutual mistake." (citation, quotations, and brackets omitted)); *see also* 3A C. DOUGLAS, NEW HAMPSHIRE PRACTICE, FAMILY LAW § 19.2 1, at 106 (3d ed. 2002).

Finally, and given the assumptions made here, we note that our decision properly defers to the statutory prohibition. We believe, however, that the legislature's intent behind the prohibition was to cure the perceived ill of either a court unilaterally deciding who would fund, and to what extent, the adult child's college expenses, or parties agreeing to a support provision that they otherwise would not simply because they thought a court would otherwise order it. As such, we respectfully urge the legislature to reexamine the statutory language with respect to the approval or enforcement of a stipulated parenting plan between two divorcing parties, both of whom are represented by counsel and fully informed of the statutory prohibition, where the parties have mutually agreed that one or both will voluntarily contribute to their adult child's college expenses. We do so mindful of RSA 461-A:2, I(c)-(d) (Supp. 2008) ("Statement of Purpose") which reads, in pertinent part, that "it is the policy of this state . . . to . . . [e]ncourage parents to develop their own parenting plan with the assistance of legal and mediation professionals" and to "[g]rant parents and courts the widest discretion in developing a parenting plan," and of RSA 461-A:2, II (Supp. 2008) which states: "This chapter shall be construed so as to promote the policy stated in this section."

*Reversed and remanded.*

DALIANIS, DUGGAN and GALWAY, JJ., concurred.