NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JEFFREY STROBEL, *Petitioner/Appellee*,

*v.*

GAIL ROSIER, *Respondent/Appellant*,

STATE OF ARIZONA, ex rel., DEPARTMENT OF
ECONOMIC SECURITY, *Intervenor/Appellee*.

No. 1 CA-CV 16-0644 FC
FILED 10-18-2018

Appeal from the Superior Court in Maricopa County
No. FC2012-001202
The Honorable Paul J. McMurdie, Judge

**AFFIRMED**

COUNSEL

Baskin Richards PLC, Phoenix
By William A. Richards, David E. Wood
*Counsel for Petitioner/Appellee*

Horne Law PLLC, Phoenix
By Mark W. Horne
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Jennifer B. Campbell and Chief Judge Samuel A. Thumma joined.

---

**B R O W N**, Judge:

¶1        Gail Rosier ("Mother") challenges the superior court's ruling confirming the validity of a registered order enforcing New Hampshire child support arrearage orders. For the following reasons, we affirm.

**BACKGROUND**

¶2        Jeffrey Strobel ("Father") obtained child support arrearage orders in New Hampshire, where he lives with the parties' now adult child. Father sought to enforce the New Hampshire orders in Arizona. In early 2012, the Arizona Department of Economic Security ("ADES") filed a notice of registration and petition to enforce support, asking the superior court to enter a judgment against Mother for $202,500 for past due child support. The New Hampshire orders in question are the product of a complicated procedural dispute, summarized as follows.

¶3        The parties' marriage was dissolved in 1996 pursuant to a Dominican Republic divorce decree that did not include an order for child support. In 2006, Father and the child lived in New Hampshire, and Mother lived in Arizona. Mother filed a petition to register the divorce decree in New Hampshire and establish a parenting plan, which resulted in a July 2006 order registering the decree and establishing long-distance visitation. This order did not include any child support provisions.

¶4        In 2008, Father filed a motion to clarify, which essentially requested a child support order. Father alleged the parties agreed in 1997 that Mother would save for college instead of paying child support, and in the 2006 proceedings, she admitted in her financial affidavit that she held an interest in real property valued at $150,000 for that specific purpose.[1] As

---

[1]      Later, Mother asserted she made a clerical error in her financial affidavit, and that the value of her interest in the real property was actually $105,000.

a result, the New Hampshire court entered an order in March 2009 ("March 2009 Order") directing Mother to immediately liquidate the real property being held for the child's education expenses and place the funds in an appropriate account. The court stated that although there had never been a child support order entered, it specifically considered and found it had jurisdiction over Mother "to establish, enforce, or modify a support order pursuant to [New Hampshire Revised Statutes Annotated ("R.S.A.") section] 546-B:3 II, III, and IV," and that the parties' 1997 agreement was valid and enforceable. Mother was not present at the hearing and the court found she was in default.

¶5 When Mother failed to provide an accounting as ordered, Father filed a petition for contempt in July 2009, asking the New Hampshire court to enter an order specifying that Mother owed $105,000 in past child support. In a letter to the court dated December 8, 2009, Mother stated she was incarcerated in Arizona and could not appear at the contempt hearing set for December 22, 2009, until after she was released and received permission to travel from her parole officer. On December 22, 2009, the court granted Mother's request and continued the hearing to March 9, 2010. However, the court also granted Father's proposed order "on an ex parte basis" and found Mother in contempt of the March 2009 Order to pay child support.

¶6 In a subsequent letter, Mother informed the New Hampshire court she could not afford to attend the March 9, 2010 hearing and asked to appear telephonically. Mother also stated her late husband's assets were subject to probate litigation and she could not liquidate the real property.

¶7 On March 9, 2010, the New Hampshire court entered an order ("2010 Arrearage Order") finding Mother in contempt for failing to pay child support and ordered an immediate payment of $25,000. The court found Mother owed $202,500 in child support arrearages plus interest and ordered Mother to reimburse Father for a $7,500 inheritance her late husband left for the child that "she spent." The 2010 Arrearage Order included a payment schedule indicating Mother owed $105,000 in back child support as of March 1, 2010, payable immediately or pursuant to a payment schedule that added $10,000 a year, up to and including March 1, 2020 for a total of $205,000 in back child support. The New Hampshire court issued a corresponding Uniform Support Order ("USO") for child

support arrearages of $202,500 as of October 31, 2009, which included the payment schedule.[2]

**¶8** Shortly thereafter, Father moved to clarify the USO to require that Mother make consistent monthly payments. In June 2010, the New Hampshire court issued an amended USO ("June 2010 USO") ordering Mother to pay child support arrearages of $202,500 at the rate of $10,000 per month. The June 2010 USO did not include the payment schedule attached to Father's motion to clarify.

**¶9** Father, with the assistance of ADES, sought to enforce the June 2010 USO in Arizona. In response to the Arizona petition to enforce, Mother claimed the New Hampshire orders were issued ex parte, in violation of her due process rights and without any legal basis. Mother admitted she was served with unspecified papers regarding the New Hampshire motions while incarcerated but stated she was in no position to respond financially or emotionally. Mother informed the Arizona court that a hearing on her motion to vacate the New Hampshire orders was pending, which resulted in a continuance of the hearing in Arizona pending a resolution of Mother's New Hampshire motion to vacate.

**¶10** In May 2014, after briefing and oral argument, the New Hampshire court found no basis for vacating the existing orders, concluding that the June 2010 USO "is an enforceable order on a child support arrearage." The New Hampshire Supreme Court declined Mother's notice of appeal.[3]

**¶11** Back in Arizona, Mother raised several defenses to enforcement pursuant to Arizona Revised Statutes ("A.R.S.") section 25-1307 and the Full Faith and Credit for Child Support Orders Act, 28 United States Code ("U.S.C.") section 1738B. ADES took no position on Mother's request to vacate the registration or enforcement. Father argued Mother was precluded from seeking relief from enforcement under the

---

[2] Mother claimed she first received the 2010 Arrearage Order on November 11, 2013, after appearing in court in Arizona.

[3] As the New Hampshire Supreme Court explained, pursuant to "Rule 7(1)(B), the supreme court may decline to accept a notice of discretionary appeal from the superior or circuit court. No appeal, however, is declined except by unanimous vote of the court with at least three justices participating."

doctrines of res judicata, the Full Faith and Credit Clause of the United States Constitution, and 28 U.S.C. § 1738B.

¶12            After an evidentiary hearing, the Arizona superior court found Mother failed to establish a defense to enforcement under A.R.S. § 25-1307(A) and confirmed the registration of the New Hampshire arrearage orders. We have jurisdiction over Mother's timely appeal pursuant to A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶13            To contest the validity or enforcement of the New Hampshire orders, Mother has the burden of proving the orders were not entitled to full faith and credit or establishing one of the defenses recognized in A.R.S. § 25-1307(A), which is part of Arizona's version of the Uniform Interstate Family Support Act. Judgments rendered in a particular state shall be given the same full faith and credit by the courts of every other state "as the judgment would be accorded in the rendering state." *Phares v. Nutter*, 125 Ariz. 291, 293 (1980). "But foreign judgments may be attacked if the rendering court lacked jurisdiction over the person or subject matter, the judgment was obtained through lack of due process, the judgment was the result of extrinsic fraud, or if the judgment was invalid or unenforceable." *Id.* Whether a foreign judgment is entitled to full faith and credit is a question of law that we review de novo. *Grynberg v. Shaffer*, 216 Ariz. 256, 257, ¶ 5 (App. 2007).

### A.    Subject Matter Jurisdiction

¶14            Pursuant to 28 U.S.C. § 1738B(c)(1)(A), a foreign support order is entitled to full faith and credit if the issuing court had subject matter jurisdiction to hear the matter and enter the order and had personal jurisdiction over the parties. "[A] duly authenticated judgment of a court of general jurisdiction of a sister state is prima facie evidence of that court's jurisdiction to render it and of the right which it purports to adjudicate." *Lofts v. Superior Court*, 140 Ariz. 407, 411 (1984). Mother asserts the New Hampshire court did not have subject matter jurisdiction (1) to enforce the agreement to pay college expenses as a child support order, or (2) to enter an arrearage order when there was no prior child support order.

¶15            Mother characterizes these arguments as challenges to the New Hampshire court's subject matter jurisdiction; however, her arguments are based on the *correctness* of the rulings under applicable New Hampshire law. Subject matter jurisdiction "refers to a court's statutory or constitutional power to hear and determine a particular case." *In re*

*Marriage of Thorn*, 235 Ariz. 216, 220, ¶ 17 (App. 2014) (quoting *State v. Maldonado*, 223 Ariz. 309, 311, ¶ 14 (2010)). Allegations of legal error do not constitute a lack of subject matter jurisdiction. In *Estes v. Superior Court*, our supreme court "distinguished 'the right of a court to misconstrue the law measuring the rights of the parties . . . [from] the right of a court to misconstrue a statute or law from which jurisdiction or power of the court flows—a jurisdictional law.'" *Estes v. Superior Court*, 137 Ariz. 515, 517 (1983) (quoting *Ariz. Pub. Serv. Co. v. S. Union Gas Co.*, 76 Ariz. 373, 382 (1954)). "Misinterpreting a procedural matter amounts to legal error which may result in reversal by an appellate court, but subject matter jurisdiction remains unaffected by the misinterpretation." *Id.* Allegations that the New Hampshire orders were improperly based on a contract, instead of child support guidelines, and were not based on a prior child support order, constitute assertions of legal error, not a lack of subject matter jurisdiction.

¶16        Even assuming Mother is challenging more than the correctness of the New Hampshire court's rulings, she has failed to establish that the arrearage orders are void for lack of subject matter jurisdiction. Relying on *In re Goulart*, 965 A.2d 1068, 1071 (N.H. 2009), Mother argues that "New Hampshire courts are without subject matter jurisdiction to issue or enforce any order for the payment of college expenses." In *Goulart*, the parents stipulated to inclusion of a provision for payment of college expenses in the anticipated divorce decree, notwithstanding a statutory provision that prohibited such an order. *Id.* at 1070 (citing R.S.A. 461–A:14, V ("No child support order shall require a parent to contribute to an adult child's college expenses or other educational expenses beyond the completion of high school.")). The New Hampshire Supreme Court held that the family court lacked subject matter jurisdiction to approve a parenting plan or issue an order requiring a parent to pay an adult child's college education expenses and a parent's "'waiver' could not confer subject matter jurisdiction where it did not exist; and any such orders were void." *Id.* at 1071. The New Hampshire arrearage orders in this case, although based on the parties' 1997 agreement, do not require Mother to contribute to her son's "college expenses or other educational expenses" and thus the orders do not fall within the plain language of the statute at issue in *Goulart*. *See id.* at 1070 (citing R.S.A. 461–A:14, V).

¶17        Moreover, Mother fails to acknowledge the "proposition that the requirements of full faith and credit bar a defendant from collaterally attacking a divorce decree on jurisdictional grounds in the courts of a sister State where there has been participation by the defendant in the divorce proceedings, where the defendant has been accorded full opportunity to contest the jurisdictional issues, and where the decree is not susceptible to

such collateral attack in the courts of the State which rendered the decree." *Sherrer v. Sherrer*, 334 U.S. 343, 351–52 (1948); *see also Williams v. North Carolina*, 325 U.S. 226, 230 (1945) ("It is one thing to reopen an issue that has been settled after appropriate opportunity to present their contentions has been afforded to all who had an interest in its adjudication. This applies also to jurisdictional questions. After a contest these cannot be relitigated as between the parties.").

¶18            Mother had a full opportunity to challenge the New Hampshire court's subject matter jurisdiction but did not do so until Father registered the arrearage orders in Arizona. In fact, Mother indicated just the opposite when she filed her 2014 motion to vacate in New Hampshire, stating that "[she] does not dispute that the Court had jurisdiction to establish a child support order under the Uniform Interstate Family Support Act, [R.S.A.] chapter 546-B:31." Thus, Mother has failed to meet her burden of showing that the New Hampshire court lacked subject matter jurisdiction to issue the arrearage orders.

## B.      Res Judicata

¶19            Mother's collateral attacks on the merits of the New Hampshire orders are precluded under the doctrine of res judicata (claim preclusion), which provides that an existing final judgment on the merits by a court of competent jurisdiction bars further litigation between the same parties on every point decided as well as every point that could have been decided on the record in the prior proceeding. *See Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 710 (1982) ("A party cannot escape the requirements of full faith and credit or res judicata by asserting its own failure to raise matters clearly within the scope of a prior proceeding."); *Pettit v. Pettit*, 218 Ariz. 529, 530, ¶ 1 (App. 2008) (holding that res judicata bars re-litigation of matters actually litigated in a prior action as well as issues that might have been litigated); *see also Brooks v. Trs. of Dartmouth Coll.*, 20 A.3d 890, 894 (N.H. 2011) (same).

¶20            Mother argues the 2010 Arrearage Order and subsequent New Hampshire orders were based on Father's fraudulent misrepresentations in the March 2010 hearing. Mother's allegations of legal errors and fraud were either raised or could have been raised in the 2014 New Hampshire proceedings or earlier. In seeking to vacate the March 2009 Order and subsequent orders, Mother argued in part there was no basis in fact or law for the New Hampshire orders. And as her counsel acknowledged at the Arizona evidentiary hearing, Mother could have

raised all of her substantive claims, including fraud, in her 2014 New Hampshire motion to vacate, but she failed to do so.

**¶21** Mother contends the New Hampshire orders do not have preclusive effect because they were entered by default, citing *Schilz v. Superior Court*, 144 Ariz. 65 (1985). In that case, our supreme court held that a foreign judgment was not entitled to full faith and credit because neither the father nor his counsel had appeared or otherwise litigated the matters at issue. *Schilz*, 144 Ariz. at 68. Thus, the Arizona courts could consider whether the issuing court properly exercised jurisdiction. *Id.* Here, although Mother did not contest jurisdiction in New Hampshire, she appeared, or had the opportunity to appear, in those proceedings and thus had the opportunity to raise defenses and objections, including lack of jurisdiction. Accordingly, the New Hampshire orders are entitled to res judicata effect. *See Lofts*, 140 Ariz. at 411 ("When the rendering court in a *contested* hearing determines it has jurisdiction, its determination is res judicata on the jurisdictional issue and cannot be relitigated in another state."). As to Mother's non-jurisdictional arguments, a "default judgment has the same res judicata effect as a judgment in a matter where the issues were litigated." *Norriega v. Machado*, 179 Ariz. 348, 353 (App. 1994) (citing *Tech. Air Prods., Inc. v. Sheridan-Gray, Inc.*, 103 Ariz. 450, 452 (1968)).

**¶22** Mother relies on *State ex rel. Dep't of Econ. Sec. v. Powers*, 184 Ariz. 235 (App. 1995), which is also distinguishable. In *Powers*, the parties' default divorce decree did not mention any children common to the parties. *Id.* at 237–38. In addressing a subsequent paternity action, we concluded that the child's paternity was not actually litigated in the divorce proceeding and thus we declined to apply collateral estoppel (issue preclusion). *Id.* at 238. The analysis in *Powers* did not involve application of res judicata and thus it is not relevant to the issues presented here. Unlike collateral estoppel, res judicata does not require actual litigation. *See Circle K Corp. v. Indus. Comm'n*, 179 Ariz. 422, 427 (App. 1993) ("Issue preclusion does not apply in this case because the issue of causation has never been litigated."); *see also In re the Gen. Adjudication of All Rights to Use Water in the Gila River Sys. & Source*, 212 Ariz. 64, 70 n.8, ¶ 14 (2006) (noting that only "claim preclusion" was at issue and recognizing that with respect to a default judgment, "none of the issues is actually litigated.").

**¶23** Mother never appealed the 2009 New Hampshire orders, and they became final. Her attempt to vacate those orders in 2014 was unsuccessful. She argues the 2014 New Hampshire proceedings are not entitled to res judicata effect because the issues raised were not actually litigated. However, in her motion to vacate and at the 2014 hearing, Mother

argued there was no child support order on which to base an arrearages order; the amount of the arrearages had no factual basis; she could not liquidate the real property and thus could not be found in willful violation of a court order; and she was wrongfully denied a continuance or telephonic appearance. The New Hampshire court affirmed the prior orders, and Mother's subsequent appeal was denied. Regardless of whether the New Hampshire courts decided these issues correctly in 2009, 2010, and again in 2014, the doctrine of res judicata precludes Mother from challenging those orders in this proceeding.[4]

### C.    Due Process

**¶24**        Mother also argues the New Hampshire orders are not entitled to full faith and credit because she was denied due process. *See* 28 U.S.C. § 1738B(c)(2). She contends she was never served with the December 2009 order, the 2010 Arrearage Order, Father's May 2010 motion to clarify, or the resulting June 2010 USO. However, Father's 2010 motion to clarify included a certificate of service signed by his attorney. The June 2010 USO states it was issued after a hearing and lists Mother's Church Road address. Mother now claims the Church Road address was incorrect and that she notified the New Hampshire court to send everything to her criminal defense attorney in Arizona. But Mother's December 8, 2009 letter to the court does not list an Arizona address or give her criminal defense attorney's address. Similarly, Mother's letter asking to continue the March 9, 2010 hearing does not provide a criminal defense attorney's address, and although it includes a different address under her signature, the letter does not constitute proper notification of a change of address.

**¶25**        Additionally, at the 2014 hearing in New Hampshire, Mother stated she received the "2010 order" and "contacted her New Hampshire attorney." In the 2014 New Hampshire proceedings, Mother never claimed she was not served or did not receive any orders. This is inconsistent with her claim in the Arizona proceedings that she was not aware of the 2010 Arrearage Order until November 2013. In light of these facts and Mother's letters to the New Hampshire court in December 2009 and March 2010, we can reasonably infer that the Arizona court found Mother's claim that she was unaware of the New Hampshire orders or the status of the arrearage litigation was not credible. *See Wippman v. Rowe*, 24 Ariz. App. 522, 525

---

[4]        Because we conclude the New Hampshire orders are entitled to full faith and credit, we need not address Father's argument that Mother's unsuccessful litigation against Father in federal district court also precludes Mother's challenge to the New Hampshire orders.

(1975) (holding that an appellate court "may infer from any judgment the findings necessary to sustain it if such additional findings do not conflict with express findings and are reasonably supported by the evidence").

¶26 Mother also contends she was denied due process by the New Hampshire court's denial of her request to appear telephonically and to appoint counsel. Regarding appointment of counsel, Mother does not point or direct us to any part of the record where she made such a request in the New Hampshire court proceedings. Thus, we reject Mother's contention that she was denied due process when the New Hampshire court failed to sua sponte appoint counsel. Moreover, a trial court *may* appoint counsel in child support enforcement cases when the possibility of incarceration exists and when the defendant may be treated unfairly without the assistance of counsel. *Duval v. Duval*, 322 A.2d 1, 4 (N.H. 1974). Mother has failed to establish how she would have been treated unfairly if she had appeared on her own behalf in New Hampshire in connection with the 2009 and 2010 proceedings.

¶27 The reasons for the New Hampshire court's failure to rule on Mother's informal request to appear telephonically at the hearing are unclear. The New Hampshire court continued the December 2009 hearing, thus implicitly denying the request, but in the same order it found Mother in contempt. The 2010 Arrearage Order was entered after Mother sent another letter stating she was available to appear telephonically or was "open to continuing the matter." Father claimed he received Mother's letter one day before the March 2010 hearing. Mother did not establish when the New Hampshire court received her letter. Without such evidence, the New Hampshire court properly may have deemed Mother's request untimely or improperly filed. Mother also raised this issue in the 2014 New Hampshire motion to vacate, which was denied. Although the ex parte/default nature of the December 2009 and June 2010 orders seems unusual, we cannot conclude on this record that Mother was deprived of due process.

### D. Application of A.R.S. § 25-1307(A)

¶28 Under A.R.S. § 25-1307(A)(5), a party may seek to vacate the registration of a foreign support order if he or she establishes "a defense under the law of this state to the remedy sought." That section provides as follows:

> A party contesting the validity or enforcement of a registered support order or seeking to vacate the registration has the burden of proving one or more of the following defenses:

1. The issuing tribunal lacked personal jurisdiction over the contesting party.
2. The order was obtained by fraud.
3. The order has been vacated, suspended or modified by a later order.
4. The issuing tribunal has stayed the order pending appeal.
5. There is a defense under the law of this state to the remedy sought.
6. Full or partial payment has been made.
7. The statute of limitations applicable under § 25-1304 precludes enforcement of some or all of the alleged arrearages.
8. The alleged controlling order is not the controlling order.

A.R.S. § 25-1307(A). Mother contends her obligation to pay college expenses is not child support, but instead is a contractual obligation which cannot be enforced by way of contempt in Arizona after the child turns 18. In *Solomon v. Findley*, 167 Ariz. 409, 411–12 (1991), our supreme court held that the superior court lacked authority to enforce child support provisions after a child reached majority, but the parties' agreement to pay college expenses was enforceable as an independent contract claim.

¶29 Mother contends she could not have raised this Arizona defense in the New Hampshire proceedings; therefore, it is not barred by res judicata. However, her attempt to challenge the authority to enter a child support order that arguably should have been handled as a contract claim constitutes an impermissible collateral attack on the New Hampshire arrearage order. Correctly or incorrectly, the New Hampshire court expressly concluded that the parties' agreement supported a valid and enforceable child support order. After Mother failed to comply with that order, the New Hampshire court found her in contempt and entered a child support arrearage order. Mother improperly seeks to apply Arizona law regarding agreements to pay college expenses to an issue already decided by the New Hampshire court based on New Hampshire law.[5]

---

[5] New Hampshire does allow contempt enforcement in some circumstances. *See Solomon*, 167 Ariz. at 411–12 n.2 (citing *Lund v. Lund*, 74 A.2d 557, 559 (N.H. 1950) (allowing contempt action for spouse's failure to pay tuition expenses of the parties' child after she turned 18, as one of

¶30        Because Mother challenges the *interpretation* of the arrearage order as a child support order, the law of the issuing state applies.  *See* 28 U.S.C. § 1738B(h)(2).  This is not an issue of enforcement, where Arizona law would apply.  *See id.* § 1738B(h)(1).  On this choice of law question, 28 U.S.C. § 1738B governs and "preempts all similar state laws pursuant to the Supremacy Clause of the United States Constitution." *In re Marriage of Yuro*, 192 Ariz. 568, 571, ¶ 7 (App. 1998).  Pursuant to 28 U.S.C. § 1738B(h), we apply New Hampshire law to interpret the orders, not Arizona law.  Mother, therefore, cannot rely on *Solomon* in her effort to challenge the correctness of the arrearage orders issued by the New Hampshire court.

**CONCLUSION**

¶31        We affirm the order to enforce the arrearage orders.  We deny Father's request for an award of attorneys' fees on appeal because he failed to cite any authority to support his request.  *See Ezell v. Quon*, 224 Ariz. 532, 539, ¶ 31 (App. 2010); *see also* Arizona Rules of Civil Appellate Procedure ("ARCAP") 21(a)(2).



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

several jurisdictions allowing post-majority support provisions to be enforced by contempt)).